[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14781
_____

D.C. Docket Nos. 1:12-cv-23886-RSR; 10-bkc-03812-AJC


In re: MAURY ROSENBERG,

                                                                    Debtor.

_____

DVI RECEIVABLES XIV, LLC,
DVI RECEIVABLES XVII, LLC,
DVI RECEIVABLES XVIII, LLC,
DVI RECEIVABLES XIX, LLC,
DVI FUNDING, LLC,
LYON FINANCIAL SERVICES, INC.,
U.S. BANK, N.A.,
DVI RECEIVABLES XVI, LLC,

                                                        Plaintiffs-Appellants,

versus

MAURY ROSENBERG,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 27, 2015)

Before HULL, JULIE CARNES, and WALKER,[*] Circuit Judges.

HULL, Circuit Judge:

DVI Receivables XIV, LLC; DVI Receivables XVI, LLC; DVI Receivables XVII, LLC; DVI Receivables XVIII, LLC; DVI Receivables XIX, LLC; DVI Funding, LLC (collectively, the "DVI Entities"); Lyon Financial Services, Inc. d/b/a U.S. Bank Portfolio Services ("Lyon"); and U.S. Bank, N.A. ("USB") (collectively, "Appellants") appeal the district court's decision affirming the bankruptcy court's final order awarding appellee Maury Rosenberg attorney's fees and costs, pursuant to 11 U.S.C. § 303(i)(1). After careful review of the record and the parties' briefs, and with the benefit of oral argument, we affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

The DVI Entities filed an involuntary bankruptcy petition against appellee Rosenberg. After the bankruptcy court dismissed the petition, the court awarded attorney's fees and costs to appellee Rosenberg. We begin by describing the

_____

[*]Honorable John M. Walker, Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

2

alleged debts that the DVI Entities used as the basis for filing the involuntary petition against Rosenberg.

## A.    Underlying Debt Dispute

Beginning in November 2000, certain limited partnerships affiliated with Rosenberg (the "NMI LPs") entered into equipment leases with DVI Financial Services, Inc. ("DVI Financial") to finance the acquisition of medical equipment. Lessor DVI Financial bought the equipment and leased it to the NMI LPs, which were to make lease payments to DVI Financial.  As security for the payment of the NMI LPs' obligations under these leases, appellee Rosenberg executed an individual limited guaranty to DVI Financial.  DVI Financial agreed to act as the servicing agent for the leases, which were part of complex securitization transactions involving the parties on appeal.

The equipment leases and related assets were ultimately transferred from lessor-servicing agent DVI Financial to the DVI Entities, appellants here.  The DVI Entities were special purpose entities created solely for the purpose of the securitization transactions, by which the DVI Entities issued notes, secured by the leases, to noteholders.  In other words, DVI Financial, through the DVI Entities, financed the purchase of the medical equipment (which they leased to the NMI LPs) apparently by obtaining loans from and issuing notes to noteholders.

3

In turn, appellants the DVI Entities assigned all of their rights and interests in the equipment leases to appellant USB, the Trustee for the noteholders. After DVI Financial filed for bankruptcy in August 2003, appellant Lyon took over lessor DVI Financial's servicing obligations with respect to the leases. At the time it assumed the role of successor servicer for the DVI Entities, Lyon was a second-tier subsidiary of USB.

In December 2003, Lyon, as successor servicer, sued Rosenberg and the NMI LPs in Pennsylvania state court to recover the amounts allegedly owed under the equipment leases. On August 12, 2005, Rosenberg, the NMI LPs, and two other entities related to the NMI LPs entered into a settlement agreement with Lyon to restructure the NMI LPs' obligations under the leases. Lyon executed the agreement in its capacity as the successor servicer for the DVI Entities and as agent for Trustee USB. The DVI Entities were not parties to the settlement and did not sign the agreement; rather, Jane Fox signed the agreement on behalf of Lyon as Lyon's Director of Operations.

As part of the 2005 settlement, Rosenberg executed another individual limited guaranty, which superseded all prior guaranties. Rosenberg personally guaranteed the sums identified in the guaranty agreement to "the Agent," defined as "Lyon Financial Services, Inc. d/b/a/ U.S. Bank Portfolio Services as successor servicer for the [DVI Entities] and as agent for the Trustee." The maximum

4

amount of Rosenberg's limited guaranty was $7,661,945.00, to be reduced each month by a certain sum for each monthly payment made under the settlement agreement. The obligations created by Rosenberg's 2005 limited guaranty ran solely to Lyon, and only Lyon could demand payment of such obligations. Also as part of the 2005 settlement, Rosenberg executed a confession of judgment in favor of Lyon.

In March 2008, Lyon notified Rosenberg of an alleged default due to the NMI LPs' failure to make the requisite monthly payments. In July 2008, Lyon, as agent for Trustee USB, filed a complaint in confession of judgment against Rosenberg and others in Pennsylvania state court to collect on the amounts allegedly due under the 2005 confession of judgment and limited guaranty made in connection with the equipment leases. The DVI Entities were not plaintiffs in this state court action. In August 2008, Lyon obtained the requested judgment for $4,724,866.16 against Rosenberg individually. At Rosenberg's request, the Pennsylvania state court stayed execution of the judgment pending resolution of a dispute over the validity and amount of debt allegedly owed by Rosenberg to Lyon.

**B.    2008 Involuntary Petition**

On November 7, 2008, Jane Fox, on behalf of the DVI Entities, filed an involuntary Chapter 7 bankruptcy petition against Rosenberg in the U.S.

5

Bankruptcy Court for the Eastern District of Pennsylvania. Each of the DVI Entities asserted a claim against Rosenberg with respect to the 2005 individual limited guaranty he had made in connection with the equipment leases. The DVI Entities' six claims totaled $5,363,361.56. The involuntary petition was later transferred to the U.S. Bankruptcy Court for the Southern District of Florida.

Section 303 of the Bankruptcy Code governs the filing of involuntary bankruptcy petitions and allows creditors to force debtors into liquidation under Chapter 7 or reorganization under Chapter 11. 11 U.S.C. § 303. The petition must be brought by at least three eligible creditors (unless there are fewer than twelve eligible creditors), with each creditor holding a separate claim against the alleged debtor, and the claims must not be contingent or subject to a bona fide dispute as to liability or amount. See id. § 303(b).

The November 7, 2008 involuntary petition nominally listed the DVI Entities as the "petitioning creditors." Lyon was not expressly named on the petition as a petitioning creditor, either in its capacity as successor servicer for the DVI Entities or as agent for Trustee USB. However, abundant evidence showed that Lyon actually filed the petition on behalf of each DVI Entity. The petition's signature blocks show that Jane Fox, the Director of Operations for Lyon, signed the petition individually on behalf of each DVI Entity.[1] In addition, for each DVI

---

[1]The petition was subsequently amended, and the amendment was also signed by Fox.

Entity, the petition listed "Jane Fox c/o U.S. Bank Portfolio Services, as Servicer" and "1310 Madrid Street, Suite 103[,] Marshall, MN 56258" as the name and mailing address of the "Individual Signing in Representative Capacity." Lyon did business as "U.S. Bank Portfolio Services," and this mailing address under Fox's signature was Lyon's too.

Furthermore, the evidence showed that the DVI Entities had no knowledge of the involuntary petition separate from Fox's knowledge. At the time Fox executed the involuntary petition in November 2008, Fox was not an officer, director, or employee of any DVI Entity. Rather, Fox was the Director of Operations for Lyon. There was no meeting of the directors or officers of any DVI Entity to authorize Fox to sign the involuntary petition. In fact, no one at Lyon, including Fox, ever corresponded with any DVI Entity before the filing of the petition. Indeed, as of the petition date, five of the DVI Entities were not even in good standing with the Delaware Secretary of State and had been administratively dissolved. It was not until mid-January 2009 that Lyon's in-house counsel, at Fox's direction, filed certificates of revival for the five DVI Entities to place them in good standing again.

According to her deposition testimony concerning her role as the signer, Fox believed that only Lyon had the authority to sign the involuntary petition, and that none of the DVI Entities had the authority to do so on their own behalf because

7

Lyon was granted broad authority to act for the DVI Entities. Fox testified that she understood Lyon's authority to include the filing of the petition on behalf of the DVI Entities. While the DVI Entities were the original creditors in the underlying transactions, Lyon on its own made the decision to file the petition against Rosenberg and then Lyon actually filed it.

On December 3, 2008, Rosenberg moved to dismiss the involuntary bankruptcy petition against him.

## C.     2009 Dismissal Order

On August 21, 2009, the bankruptcy court granted Rosenberg's motion to dismiss and dismissed the involuntary petition with prejudice ("Dismissal Order"). The bankruptcy court found, <u>inter alia</u>, that the DVI Entities were not eligible creditors of Rosenberg because his 2005 guaranty did not run to the DVI Entities. Rather, Rosenberg's obligations under his individual limited guaranty, if any, ran only to Lyon in its capacity as successor servicer and as agent for Trustee USB. Moreover, the DVI Entities were not the "real parties in interest"—rather, they were just "pass through vehicles" created solely to facilitate the securitization transactions. The DVI Entities therefore lacked standing as a matter of law to file an involuntary petition against Rosenberg.

Alternatively, the bankruptcy court also ruled that even if the DVI Entities were real parties in interest, they, as well as Lyon, were judicially estopped from

8

prosecuting the involuntary case.  In its complaint against Rosenberg in Pennsylvania state court, Lyon claimed that it was entitled to a judgment for $4,724,866.16.  Later, in the bankruptcy proceeding, Lyon took the inconsistent position that Rosenberg's obligations under the 2005 limited guaranty actually ran to the DVI Entities.

The bankruptcy court dismissed the case in August 2009 but retained jurisdiction to award Rosenberg his costs, reasonable attorney's fees, and damages (if appropriate) under 11 U.S.C. § 303(i).  The Dismissal Order was appealed to, and affirmed by, both the district court in 2011 and then this Court in 2012.  DVI Receivables XIV, LLC v. Rosenberg (In re Rosenberg), Case No. 10-24347 (S.D. Fla. Sept. 27, 2011), aff'd, 472 F. App'x 890 (11th Cir. 2012).[2]

## D.    Rosenberg's 11 U.S.C. § 303(i) Adversary Proceeding

Meanwhile, on December 27, 2010, Rosenberg filed in the bankruptcy court a separate adversary complaint against Appellants and Fox, initiating adversary proceeding number 10-03812.  In his adversary complaint, Rosenberg asserted federal claims to recover attorney's fees, costs, and damages he incurred because of the filing of the involuntary petition, which the bankruptcy court had dismissed

---

[2]During these two appeals of the Dismissal Order, Rosenberg did not request the district court or this Court to award him the attorney's fees he incurred in defending the appeals of the Dismissal Order.  Rather, as explained infra in part I.D, Rosenberg requested those fees first in the bankruptcy court and through an adversary proceeding under § 303(i).

in August 2009.[3]  Specifically, Rosenberg's adversary complaint sought relief under § 303(i) of the Bankruptcy Code.  Relevant to this appeal, § 303(i)(1) grants courts the discretion to award costs and attorney's fees to discourage creditors from improperly filing involuntary petitions under § 303.  Section 303(i) provides:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>> (1) against the petitioners and in favor of the debtor for—
>>> (A) costs; or
>>> (B) a reasonable attorney's fee; or
>> (2) against any petitioner that filed the petition in bad faith, for—
>>> (A) any damages proximately caused by such filing; or
>>> (B) punitive damages.

11 U.S.C. § 303(i).

Under the plain language of the § 303(i)(1) statute, there are two prerequisites to obtain a judgment against the petitioners for attorney's fees and costs: (1) the bankruptcy court must have dismissed the involuntary petition other than on consent of all petitioners and the debtor; and (2) the debtor must not have waived his right to recover under § 303(i).  In addition, if the involuntary petition was filed in bad faith, § 303(i)(2) allows the court to award (A) "any damages"

---

[3]Rosenberg's adversary complaint named additional defendants and raised state law claims for abuse of process and malicious prosecution.  The bankruptcy court later dismissed these additional defendants and state law claims, leaving only the federal law claims against the DVI Entities, Lyon, USB, and Fox.

proximately caused by the filing of a petition and (B) punitive damages.  Id. § 303(i)(2).

In his adversary proceeding and regarding the 2009 Dismissal Order, Rosenberg sought different types of recovery, including: (1) reasonable attorney's fees and costs incurred by two law firms (Weir & Partners, LLP and Genovese Joblove & Battista, P.A.) on his behalf to defend against the involuntary petition, obtain the dismissal of the petition in the bankruptcy court, and sustain the dismissal in all appeals, pursuant to § 303(i)(1); (2) damages—including compensatory, consequential, special, and punitive damages—suffered by Rosenberg and proximately caused by the bad-faith filing of the petition, pursuant to § 303(i)(2); and (3) the payment of all costs and expenses incurred by Rosenberg to prosecute this adversary proceeding itself, pursuant to § 303(i).

On March 12, 2012, Rosenberg demanded a jury trial on all triable issues in the adversary proceeding.  Because Appellants and Fox did not consent to a jury trial in the bankruptcy court, they filed a motion to withdraw reference of the adversary proceeding, pursuant to 28 U.S.C. § 157(d), for a jury trial in the U.S. District Court for the Southern District of Florida.

On August 10, 2012, U.S. District Judge Patricia Seitz granted the motion to withdraw reference only as to Rosenberg's bad-faith claims for damages under § 303(i)(2).  Judge Seitz found that because claims for damages under § 303(i)(2),

unlike claims for fees and costs under § 303(i)(1), require a finding of the petitioner's "bad faith," they were analogous to common-law claims for malicious prosecution and thus triable by a jury.  Accordingly, Rosenberg's § 303(i)(2) claims were withdrawn for the purpose of a jury trial, but Rosenberg's claims for attorney's fees and costs remained referred to the bankruptcy court.

### E.      Bankruptcy Court Bench Trial on Attorney's Fees

While the jury trial issue as to bad-faith damages under § 303(i)(2) was litigated in the district court, Rosenberg's claims for attorney's fees and costs under § 303(i)(1) remained for adjudication in the bankruptcy court.

On August 28, 2012, the bankruptcy court conducted a bench trial on Rosenberg's § 303(i)(1) claims for attorney's fees and costs.  At trial, Rosenberg sought to recover four categories of fees: (1) fees incurred to obtain the dismissal of the involuntary petition in the bankruptcy court; (2) fees incurred to sustain that dismissal on appeal in the district court and then in this Court; (3) fees incurred in the adversary proceeding itself to recover the first two categories of fees, called "fees on fees"; and (4) fees incurred to prosecute his bad-faith claims for damages under § 303(i)(2).

During the trial, Appellants questioned whether fees incurred for the adversary proceeding itself—including the bad-faith claims for damages—were premature.  Appellants requested that the bankruptcy court defer ruling on the

12

premature issue of attorney's fees related to the adversary proceeding until after the district court's jury trial on the bad-faith claims for damages because Rosenberg had not yet prevailed on those bad-faith claims.

## F.    2012 Attorney's Fee Order Under § 303(i)(1)

On September 11, 2012, and after the bench trial, the bankruptcy court entered an Order Determining Reasonable Amounts of Attorneys' Fees and Costs Recoverable Against Petitioning Creditors, Pursuant to 11 U.S.C. § 303(i)(1) ("Attorney's Fee Order").

In its Attorney's Fee Order, the bankruptcy court made these factual findings concerning the filing of the involuntary petition: (1) Appellants had not proven that Fox acted without the authority of Lyon; (2) Fox signed the petition as an officer of Lyon, which was the successor servicer for the DVI Entities; and (3) Lyon, through its agent Fox, acted as an agent for the DVI Entities in filing the petition. The bankruptcy court concluded that, under certain circumstances, agents or principals of petitioning creditors may be held liable under § 303(i), and that such liability should be imposed in this instance on Lyon.

The bankruptcy court also found that it had the authority to award the fees and costs that Rosenberg incurred not only (1) in obtaining the dismissal but also (2) in defending the two appeals from the Dismissal Order ("appellate fees"). The bankruptcy court reasoned that the denial of appellate fees—for sustaining the

dismissal on appeal—would frustrate the legislative intent behind § 303(i).  The bankruptcy court rejected the argument that appellate fees must be sought in the appellate court, finding that it was appropriate for a bankruptcy court to award appellate fees under the § 303(i) statute in the Bankruptcy Code, "[n]otwithstanding whether the District Court and/or the Eleventh Circuit might well have granted fees."

The bankruptcy court declined to defer consideration of the "fees on fees," which were Rosenberg's fees incurred in the adversary proceeding to recover fees and costs under § 303(i)(1).  The bankruptcy court found that it was appropriate to award fees and costs for the services provided in the adversary proceeding to date, even though the proceeding had not yet concluded.  The bankruptcy court reasoned that "[a]n award of fees and costs in this Adversary Proceeding is not premised upon which party 'prevails'" in the proceeding, and, under § 303(i)(1), Rosenberg had already "prevailed" on the merits.

As to which parties were subject to § 303(i) liability, the bankruptcy court reiterated its "view that the term 'petitioner,' as used in [§] 303(i), may be construed to include those agents and/or principals who sign the involuntary petition on behalf of the creditors or who cause the petitioning creditors to file the petition."  The bankruptcy court then turned to Lyon's liability, finding: (1) Fox, as an employee of Lyon, executed the involuntary petition and caused the filing of

14

same; (2) Fox, on behalf of Lyon, exercised exclusive control over the DVI Entities, acting within the scope of her employment as Director of Operations with Lyon; (3) Lyon acted on behalf of USB, the Trustee for the securitized transactions; (4) these parties—Fox, Lyon, and the DVI Entities—were intertwined; and (5) based on principles of agency, Fox signed the petition as an officer of Lyon which acted as the servicer and agent for the DVI Entities; and thus (6) Lyon, as Fox's principal, is liable for the fees and costs.[4]

Accordingly, the bankruptcy court held the DVI Entities and Lyon, as their agent, jointly and severally liable for $1,034,295.45 of Rosenberg's attorney's fees and approximately $39,019.37 in costs, minus certain costs incurred in connection with Rosenberg's claims against dismissed third parties. However, the bankruptcy court did not indicate the amounts, or percentages, of the total fee award corresponding to each of the four categories of fees sought by Rosenberg during the bench trial. The bankruptcy court reserved jurisdiction to award additional fees and costs "for the completion of the Adversary Proceeding, through the jury trial."

The award in the Attorney's Fee Order encompassed fees for work performed by Rosenberg's attorneys from November 11, 2008—shortly after the

---

[4]After partially withdrawing reference of Rosenberg's bad-faith claims for damages, Judge Seitz denied a request to preclude Lyon/USB from being subject to liability for damages under § 303(i)(2). Judge Seitz found that collateral estoppel barred the district court from reconsidering the issue of Lyon/USB's liability, which had been adjudicated in the bankruptcy court. In any event, Judge Seitz agreed with the bankruptcy court's determination that, under the unique factual circumstances of this case, "Lyon/USB [were] subject to liability under Section 303(i) as agent/principal for the [DVI Entities]."

filing of the involuntary petition on November 7, 2008—to August 25, 2012. The attorneys' work during this time period included: (1) fees incurred to obtain the dismissal of the involuntary petition in the bankruptcy court on August 21, 2009; (2) fees incurred to sustain that dismissal on appeal in the district court and then in this Court, which affirmed the dismissal on July 6, 2012; (3) "fees on fees," representing fees incurred in the adversary proceeding itself to recover the first two categories of fees; and (4) part of the fees incurred to prosecute Rosenberg's bad-faith claims for damages.

Some fees in the fourth category were incurred before August 25, 2012. However, the majority of the fees to prosecute Rosenberg's bad-faith claims for damages were incurred after the entry of the 2012 Attorney's Fee Order on September 11, 2012, and thus are not part of the sum in that Order. As explained below, the bad-faith-damages proceedings in the district court continued from Judge Seitz's August 10, 2012 order granting withdrawal of the reference through the 2013 jury trial and until the September 29, 2014 ruling on Appellants' post-trial motion.

Rosenberg moved for entry of a final judgment against Appellants, seeking to reduce the costs award by the amount disallowed in the Attorney's Fee Order. On April 11, 2013, the bankruptcy court granted Rosenberg's motion and entered a

16

final judgment which revised the total amount of attorney's fees and costs awarded in favor of Rosenberg to $1,032,287.04.

Appellants separately appealed the September 11, 2012 Attorney's Fee Order and the subsequent April 11, 2013 Order and Final Judgment. The two bankruptcy appeals were consolidated in the district court.

As further background, Lyon's parent company, U.S. Bank Corp. Equipment Finance, was wholly owned by appellant USB. After entry of the 2012 Attorney's Fee Order, appellant Lyon subsequently merged with USB. Though both Lyon and USB are listed as appellants, they are now a single entity. However, because the bankruptcy court found Lyon—but not USB—liable for Rosenberg's attorney's fees and costs, we refer only to Lyon in our discussion of liability, see infra part III.C.

## G.    District Court Bad-Faith Damages Trial Under § 303(i)(2)

From February 19, 2013, through March 6, 2013, Judge Seitz conducted a jury trial on Rosenberg's § 303(i)(2) bad-faith claims for damages, which had been withdrawn from the bankruptcy court on August 10, 2012. The jury found that Appellants acted in bad faith in filing the involuntary petition and awarded Rosenberg $1,120,000 in compensatory damages (for emotional distress, loss of reputation, and loss of wages) and $5,000,000 in punitive damages.

17

Appellants filed an amended Rule 50(b) motion for judgment as a matter of law, seeking to reduce the damages award. See Fed. R. Civ. P. 50(b). Judge Seitz granted in part and denied in part Appellant's Rule 50(b) motion, concluding that the evidence supported the jury's finding of bad faith but not the verdicts for punitive damages or compensatory damages for loss of reputation or loss of wages. On September 29, 2014, Judge Seitz entered an amended final judgment in favor of Rosenberg, holding the DVI Entities and USB, as Lyon's successor in interest,[5] jointly and severally liable for only $360,000 in compensatory damages for emotional distress[6] stemming from the bad-faith filing of the involuntary petition.

## H.    Appeal of 2012 Attorney's Fee Order

On September 24, 2013, the district court affirmed the bankruptcy court's 2012 Attorney's Fee Order in all respects, addressing three issues in particular. First, the district court found that the bankruptcy court did not err in awarding Rosenberg his appellate fees for defending the dismissal in the appeals, as it was "reasonable to conclude that the rationale behind Congress's enhanced protection of alleged debtors from involuntary petitions at the trial level extends to the appellate level."

---

[5]As stated earlier, Lyon and USB had merged into a single entity by this point in time.

[6]This appeal does not involve any issues as to the damages award. The parties' cross-appeals of the September 29, 2014 final judgment on damages are separately pending in this Court.

18

Second, the district court concluded that Appellants waived any challenge to the bankruptcy court's award of attorney's fees incurred in litigating Rosenberg's § 303(i)(2) bad-faith claims for damages before Judge Seitz in the district court because Appellants raised that issue for the first time on appeal. Nevertheless, the district court briefly considered the merits and rejected the argument that attorney's fees for prosecuting a bad-faith-damages claim under § 303(i)(2) are categorically unavailable under § 303(i)(1).

Third, the district court found that the bankruptcy court did not err in awarding fees and costs against Lyon, rather than only the DVI Entities. The district court reasoned that the record shows (1) Fox, the Director of Operations of Lyon, filed the involuntary petition without any authorization from the directors of the DVI Entities; (2) Fox, acting within the scope of her employment as the Director of Operations of Lyon, nevertheless exercised "exclusive control" over the DVI Entities; (3) the DVI Entities were merely "pass through vehicles" "created solely for the purposes of the securitization transactions" that gave rise to the involuntary petition; (4) a unique, "intertwined" relationship existed between the DVI Entities and Lyon; (5) the involuntary petition was signed by Lyon's Director of Operations in her professional capacity; and thus (6) the bankruptcy court did not err in holding Lyon liable for the filing of the involuntary petition.

This appeal followed.

19

## II.  STANDARD OF REVIEW

"In a bankruptcy case, this Court sits as a second court of review and thus examines independently the factual and legal determinations of the bankruptcy court and employs the same standards of review as the district court."  Brown v. Gore (In re Brown), 742 F.3d 1309, 1315 (11th Cir. 2014) (quotation marks omitted).  Where, as here, the district court affirms the bankruptcy court's order, we review the bankruptcy court's decision.  Id.  We review the bankruptcy court's factual findings for clear error and its legal conclusions de novo.  Id.

## III.  DISCUSSION

On appeal, there are four categories of attorney's fees we must address: (1) fees incurred to obtain the dismissal of an involuntary petition in the bankruptcy court; (2) fees incurred to sustain that dismissal on appeal to the district court and this Court; (3) "fees on fees," representing fees incurred in the adversary proceeding itself to recover the first two categories of fees; and (4) fees incurred to prosecute bad-faith claims for damages under § 303(i)(2).  In addition, Appellants argue that the bankruptcy court erred in entering a judgment for any attorney's fees and costs against Lyon, which they contended was not a "petitioner" under § 303(i).

As an initial matter, we note that Appellants do not challenge the award of attorney's fees incurred by Rosenberg to obtain the dismissal of the involuntary

petition in the bankruptcy court or the attorney's fees incurred by Rosenberg to recover those fees. Appellants do challenge the award of any appellate fees, any fees for prosecuting the bad-faith claims for damages, and any fees to recover those two categories of fees. We turn to those issues.

## A.    Appellate Fees Under § 303(i)(1)

Appellants contend that § 303(i)(1) does not authorize the award of any fees whatsoever incurred to sustain the bankruptcy court's Dismissal Order at the appellate level in the district court and this Court. Alternatively, even assuming arguendo that § 303(i)(1) authorizes appellate fees related to sustaining that dismissal, Appellants argue that appellate fees are within the exclusive purview of appellate courts and may not be awarded by the bankruptcy court. Appellants assert that, because Rosenberg failed to move for appellate fees while the Dismissal Order was on appeal in the district court and this Court, he is not entitled to receive them. This circuit has not previously addressed these issues.

To start, this case involves only a statutory award of attorney's fees authorized by the Bankruptcy Code in § 303(i)(1). Thus, we focus on the statutory language of § 303(i)(1). That section has two preconditions to the discretionary award of fees by the bankruptcy court, which are: (1) if the court dismisses the petition other than by consent, and (2) if the debtor does not waive the right to

21

judgment.  11 U.S.C. § 303(i).  Both of these preconditions are undisputedly satisfied here.

When these preconditions are met, § 303(i)(1) provides that the bankruptcy court "may grant judgment . . . against the petitioners and in favor of the debtor for—(A) costs; or (B) a reasonable attorney's fee . . . ."  Id. § 303(i)(1).  Section 303(i)(1) does not limit the attorney's fee to only the fees incurred in the bankruptcy court.  Rather, while the bankruptcy court is the court deciding what is a reasonable attorney's fee, nothing in § 303(i)(1) indicates that a court may award only those fees incurred at the trial level.  And nothing in § 303(i)(1) precludes appellate fees or limits fees to only those incurred before the date of the dismissal.

Further, we reject Appellants' argument that, even if § 303(i)(1) authorizes appellate fees in sustaining a dismissal on appeal, only appellate courts, and not bankruptcy courts at the trial level, may award them.  Of course, under Federal Rule of Appellate Procedure 38, appellate courts may award damages and costs if an appeal is frivolous.  See Fed. R. App. P. 38 ("If a court of appeals determines that an appeal is frivolous, it may . . . award just damages and single or double costs to the appellee." (emphasis added)).  For purposes of Rule 38, appellate courts are usually in the best position to evaluate whether an appeal is frivolous or had some merit.

22

However, unlike Rule 38, the statutory award of fees in § 303(i)(1) has no frivolity requirement. An alleged debtor is not required to show that an appeal from the dismissal of an involuntary petition is frivolous to be eligible for fees and costs under § 303(i)(1). That bankruptcy statute requires only that the involuntary petition be dismissed by the bankruptcy court other than on consent of all parties, and that the debtor did not waive his right to recover. See 11 U.S.C. § 303(i)(1). It does not tie the recovery of attorney's fees to a frivolity finding.

We recognize that the only other circuit to rule on this issue has interpreted § 303(i)(1) to preclude the bankruptcy court from awarding any appellate fees. See Higgins v. Vortex Fishing Sys., Inc., 379 F.3d 701, 708-09 (9th Cir. 2004) ("[Section] 303(i)(1), which expressly grants discretionary authority to award fees at the trial level, should not be construed to grant similar authority to award fees at the appellate level."). In Higgins, the Ninth Circuit acknowledged that its interpretation of § 303(i)(1) created "a discrepancy that only Congress can rectify. Despite Congress's clear intent to award attorney's fees and costs to an alleged debtor who successfully defends an involuntary bankruptcy bid, the debtor remains exposed to appellate attorney's fees unless it can be demonstrated that the appeal was frivolous under Rule 38." Id. at 709 n.3.[7]

---

[7]In so holding, the Ninth Circuit relied on its prior decision in State of California Employment Development Department v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147 (9th Cir. 1996), which did not involve the dismissal of an involuntary petition but rather appellate fees

We disagree with Higgins. In bankruptcy cases, Rule 38 is not the exclusive vehicle for awarding attorney's fees incurred to defend an appeal from the dismissal of an involuntary bankruptcy petition. Section 303(i)(1) is the statutory vehicle here. Notably, § 303(i)(1) contains no requirement that the debtor show that the petitioner acted in bad faith to recover the debtor's attorney's fees. Rather, the precondition is a dismissal of the involuntary bankruptcy petition. Section 303(i)(1)'s precondition of a dismissal reflects Congress's intent to award fees and costs to alleged debtors whose involuntary petitions are dismissed. As observed earlier, there is no language in § 303(i)(1) limiting "a reasonable attorney's fee" to those fees incurred only in initially obtaining the dismissal by the bankruptcy court. Absent any express limiting language in § 303(i)(1), we decline to construe § 303(i)(1) as precluding appellate fees and limiting fee awards to only those incurred before the date of the dismissal in the bankruptcy court. Section 303(i)(1) compensates debtors who obtain a dismissal and successfully defend against involuntary bankruptcy litigation, which may or may not end at the trial level.

We find further support for our conclusion in the distinction between fee-shifting and sanctions provisions. See Bus. Guides, Inc. v. Chromatic Comm's

---

awarded as contempt sanctions under 11 U.S.C. § 105(a) for the violation of an automatic stay. In Del Mission, the Ninth Circuit concluded that "the only authority for awarding discretionary appellate fees in bankruptcy appeals is Rule 38" and stated that Rule 38 "empowers only appellate courts, not bankruptcy courts to award . . . attorney's fees . . . incurred by an appellee in response to a frivolous appeal." 98 F.3d at 1153-54 (quotation marks omitted).

24

Enters., Inc., 498 U.S. 533, 553, 111 S. Ct. 922, 934 (1991) (holding that Federal Rule of Civil Procedure 11 was not a fee-shifting provision because Rule 11 sanctions (1) were not "tied to the outcome of [the] litigation," instead turning on whether a "specific filing" was well founded, and (2) shifted the costs of a "discrete" portion of the litigation rather than the litigation as a whole).  By contrast, it appears that § 303(i)(1) is a fee-shifting statute because any fees are tied to the outcome—the dismissal—and shift the costs of the litigation as a whole from the alleged debtor to the creditors that improperly filed the bankruptcy petition. See 11 U.S.C. § 303(i)(1).

In Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 110 S. Ct. 2447 (1990), the Supreme Court held that the sanctions provisions of Rule 11 did not authorize the award of attorney's fees incurred on appeal.  In its analysis, however, the Supreme Court noted: "As Rule 11 is not a fee-shifting statute, the policies for allowing district courts to require the losing party to pay appellate, as well as district court attorney's fees, are not applicable." Id. at 409, 110 S. Ct. at 2462. This language suggests that the policies for awarding appellate fees are applicable to cases involving fee-shifting statutes such as § 303(i)(1), subject to the bankruptcy court's discretion.

For all of these reasons, we conclude that under § 303(i)(1) the bankruptcy court did not err in awarding Rosenberg attorney's fees and costs incurred to

25

successfully defend the Dismissal Order in the appeals to the district court and then to this Court.

**B.      Fees for Prosecuting Bad-Faith Claims for Damages Under § 303(i)(2)**

Whether an alleged debtor may recover attorney's fees and costs incurred to prosecute bad-faith claims for damages under § 303(i)(2) is also an issue of first impression in this circuit.  We return to the statutory language in § 303(i).

As discussed above, § 303(i)(1) provides that if the bankruptcy court dismisses an involuntary petition, then the bankruptcy court may grant the debtor reasonable attorney's fees and costs.  11 U.S.C. § 303(i)(1).  Section 303(i)(2) further provides that if the petition was filed in bad faith, the bankruptcy court may grant the debtor actual and punitive damages.  Id. § 303(i)(2).  The issue is whether these two subsections are exclusive of each other or whether they can and should be read together and harmonized.

Under an exclusive reading of the two subsections, a debtor can recover attorney's fees under § 303(i)(1) if the petition is dismissed and may recover damages under § 303(i)(2) if the dismissed petition was filed in bad faith.  Stated another way, the award of attorney's fees in § 303(i)(1) applies to only the dismissal phase of the case (at trial and on appeal), and the award of damages in § 303(i)(2) applies only to the phase of prosecuting the bad-faith-filing claims.

On the other hand, when read together and as a whole, the § 303(i)(1) award of attorney's fees applies to all phases of the § 303 action in which the involuntary bankruptcy petition was dismissed and § 303(i)(2) provides for recovery of damages if the petition was filed in bad faith.

Courts addressing this issue have concluded that a bankruptcy court may award attorney's fees under § 303(i)(1) incurred to prosecute bad-faith claims for damages under § 303(i)(2). See, e.g., In re S. Cal. Sunbelt Developers, Inc., 608 F.3d 456, 463-64 (9th Cir. 2010)[8] ("[I]f the court finds that the debtor is eligible for an award of fees, then . . . the fee award presumptively encompasses all aspects of the § 303 action, including proceedings on claims under § 303(i)(2)."); Glannon v. Carpenter (In re Glannon), 245 B.R. 882, 894-95 (D. Kan. 2000); In re Landmark Distribs., Inc., 195 B.R. 837, 845 (Bankr. D.N.J. 1996) ("[U]pon dismissal of an involuntary petition pursuant to [§] 303(i), the court may grant judgment against petitioning creditors and in favor of the alleged debtor for costs and reasonable attorneys' fees whether related to the alleged debtor's efforts to dismiss the petition pursuant to § 303(i)(1), or to prove bad faith or establish damages pursuant to § 303(i)(2)."); In re Advance Press & Litho, Inc., 46 B.R. 700, 703 (Bankr. D. Colo. 1984) ("[N]othing in the Code or case authority limit[s]

---

[8]Sunbelt Developers appears to be in tension with the Ninth Circuit's prior decision in Higgins, which held that § 303(i)(1) precludes any award of attorney's fees incurred to sustain the dismissal of an involuntary petition on appeal. See Higgins, 379 F.3d at 708-09.

an award to the date of dismissal.  Preparation for and attendance at the hearing on attorney's fees, costs and damages are also part of the matters which are occasioned as a result of an Involuntary Petition.  As such, they are compensable under § 303(i).").

The decision in Glannon contains the most comprehensive analysis of this issue.  In Glannon, the U.S. District Court for the District of Kansas found that § 303(i)(1), which allows for attorney's fees and costs, "applies to all phases of a § 303 proceeding in which the bankruptcy petition was dismissed," while § 303(i)(2), which allows for proximately caused and punitive damages, "provides a debtor additional recovery if the court finds that the petition was filed in bad faith." 245 B.R. at 894.  Construing the § 303(i) statute as a whole, the district court in Kansas reasoned that attorney's fees and costs were "recoverable under § 303(i) without drawing a distinction between the defensive phase, in securing dismissal, or in the offensive phase, in being made whole where there was bad faith." Id.

We adopt this persuasive reading of the § 303(i) statute.  We hold that under § 303(i)(1), a bankruptcy court has the discretion to grant attorney's fees and costs incurred to prosecute bad-faith claims for damages under § 303(i)(2).

That said, there remains an issue of timing.  The bankruptcy court may grant only "reasonable" attorney's fees under § 303(i)(1).  And determining

28

reasonableness necessarily requires consideration of the litigation as a whole and the total number of hours reasonably expended. At the time of the 2012 Attorney's Fee Order, the bad-faith proceedings had only just begun. They continued for two years thereafter. Indeed, as Appellants point out, on March 13, 2013, in the bankruptcy court, Rosenberg filed a motion to supplement the award, seeking approximately $2.1 million in additional fees and costs incurred in the bad-faith proceedings after the Attorney's Fee Order on September 11, 2012.[9]

It was premature for the bankruptcy court in its 2012 Attorney's Fee Order to award the fees relating to Rosenberg's bad-faith claims for damages before the conclusion of the bad-faith proceedings in the district court. We note that none of the cases cited above involved fees relating to bad-faith claims for damages that were awarded before the end of the bad-faith phase of the proceedings. Further, the strong policy against piecemeal appeals involving the bad-faith claims supports our determination that the fee award was prematurely entered in 2012.

For these reasons, we vacate the limited portion of the award attributable to the attorney's fees and costs incurred by Rosenberg solely to prosecute his bad-faith claims for damages under § 303(i)(2). We remand for the district court to

---

[9]That motion to supplement, which is still pending in the bankruptcy court, does not affect our jurisdiction to decide this appeal of the Attorney's Fee Order and corresponding final judgment, entered on April 11, 2013.

29

remand to the bankruptcy court to remove this fourth category of fees and then to consider such fees along with the motion to supplement the award.[10]

## C.    Lyon's Liability as Petitioner

Appellants contend that, under the unambiguous meaning of the term "petitioner" in § 303(i), only the petitioning creditors (and not their agents or principals) may be liable for attorney's fees and costs.  According to Appellants, because Lyon was not expressly listed as a "petitioner" on the involuntary petition, the bankruptcy court erred by entering judgment against Lyon.

We disagree.  First, we do not view this case as presenting an issue of third party or agency liability—rather, the narrow question is whether Lyon was in fact the actual petitioner here and thus properly held liable under § 303(i)(1).

Virtually all of the evidence supports that Lyon was the de facto petitioning creditor.  Lyon, through Fox, executed the 2005 settlement agreement containing the individual limited guaranty that Rosenberg made in connection with the equipment leases.  The DVI Entities were not parties to this settlement, and any payment obligations created by the limited guaranty were owed to Lyon, not to the DVI Entities.  Lyon successfully sued Rosenberg in Pennsylvania state court to

---

[10]The parties dispute the amount of fees that will have to be removed and recalculated because they were incurred for services related to Rosenberg's bad-faith claims for damages. Appellants contend that approximately $600,000 of the total award was comprised of fees incurred in the damages proceeding and fees on fees.  Rosenberg concedes only $26,925.50 for work related solely to the bad-faith claims.  This is a dispute for the bankruptcy court to resolve on remand.

collect on the amounts allegedly due under the limited guaranty—the same alleged debts nominally asserted by the DVI Entities in the involuntary petition against Rosenberg.

A few months after the state court entered judgment in Lyon's favor, Fox, Lyon's Director of Operations, signed and filed the involuntary petition on behalf of the DVI Entities. The DVI Entities were special purpose entities created solely for the purpose of the underlying securitization transactions giving rise to the petition, and five of them had been administratively dissolved as of the petition date. Under Fox's signatures, the petition listed the name and address of U.S. Bank Portfolio Services, which was Lyon's fictitious business name and address.

Under these circumstances, the bankruptcy court did not clearly err in finding that Lyon and the DVI Entities were "intertwined," and that Lyon, through Fox, signed the involuntary petition albeit in the name of the DVI Entities. Abundant evidence demonstrates that Lyon, the only entity that signed the petition and caused it to be filed, was the petitioning creditor within the meaning of § 303(i)(1). Thus, we cannot say that the bankruptcy court erred in holding Lyon liable for Rosenberg's attorney's fees and costs.[11]

---

[11]It is therefore unnecessary to decide whether § 303(i)(1) precludes the application of agency law principles, or to delineate any agency relationships among the parties. See Big Top Koolers, Inc. v. Circus-Man Snacks, Inc., 528 F.3d 839, 844 (11th Cir. 2008) (appellate court can affirm on any ground supported by the record).

31

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's affirmance of the bankruptcy court's award of the following three categories of attorney's fees and costs: (1) fees to obtain the dismissal, (2) appellate fees, and (3) fees on fees.  We vacate the district court's affirmance of the bankruptcy court's award of the fourth category of fees and costs—those incurred to prosecute Rosenberg's bad-faith claims for damages—as prematurely entered in 2012.

Because the bankruptcy court's 2012 Attorney's Fee Order did not segregate the amounts of the four categories of fees, we remand the case to the district court with instructions to remand to the bankruptcy court: (1) to deduct from the total award the limited amount of fees and costs that were incurred solely for the legal work done to prosecute Rosenberg's bad-faith claims for damages; and (2) to reconsider that deducted fee and cost amount along with the motion to supplement. Nothing herein should be read as intimating how the bankruptcy court should exercise its discretion regarding those fees or the reasonableness of the fees requested, as those are issues for the bankruptcy court to address in the first instance.  However, given the duration, complexity, and result of the litigation, the bankruptcy court should enter detailed findings and conclusions regarding what fees it does or does not award.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**