PER CURIAM: *
This is an appeal of the district court’s dismissal of Appellant Harry McMillan’s motion for fees, costs, and damages arising from an improper petition for involuntary bankruptcy under 11 U.S.C. § 303. Thomas Aigner, a third party, entered into a Joint Prosecution Agreement with Ap-pellees Donal Schmidt and Thimothy Waf-ford to petition McMillan for involuntary bankruptcy based on a default judgment McMillan owed Aigner. The bankruptcy court dismissed the petition because it determined that Aigner transferred a portion of his interest in the claim to Schmidt and Wafford with the intention of beginning an involuntary action against McMillan. McMillan sought fees, costs, and damages against Aigner, Schmidt and Wafford. The bankruptcy court denied McMillan’s motion, and the district court affirmed as to Schmidt and Wafford.[1] McMillan appeals the decision.
*208 I. FACTUAL AND PROCEDURAL BACKGROUND
Aigner filed an involuntary bankruptcy petition against McMillan under 11 U.S.C. § 303, seeking to enforce a default judgment of approximately three million dollars that Aigner obtained against McMillan in 1999. Though the judgment had gone dormant, Aigner revived it in 2011. On December 16, 2011, Aigner entered into a Joint Prosecution Agreement (“JPA” or “Agreement”) with Appellees Schmidt and Wafford.
Schmidt and Wafford’s relationship to McMillan is unrelated to Agner’s default judgment. Around 2008, McMillan consulted for Sun River, a company owning substantial mineral rights in New Mexico, in connection with its plan to become a publicly traded company. In exchange, McMillan received stock and warrants, and he became Sun River’s largest shareholder. Some time later, Schmidt became the CEO and Wafford the CFO of Sun River. In December 2011, relations broke down between McMillan and Schmidt/Wafford.
Shortly after relations soured between McMillan and the Appellees, Schmidt and Wafford entered into the JPA with Agner. The Agreement grants Schmidt and Waf-ford a- certain degree of control over Ag-ner’s involuntary-bankruptcy petition. Pursuant to the Agreement, Agner filed a petition for involuntary bankruptcy against McMillan on December 21, 2011. Only Agner — and not Schmidt or Wafford— signed the petition. McMillan moved to dismiss the petition and counter-claimed for costs, fees, and actual and punitive damages under § 303(i).
Ater nine days of evidentiary hearings, the bankruptcy court dismissed Agner’s petition. See Aigner v. McMillan, No. 11-47029-7, 2013 WL 2445042, at *7 (Bankr.N.D.Tex. June 4, 2013). It concluded that Agner was disqualified to serve as a petitioner for involuntary bankruptcy because, via the Agreement with Schmidt and Waf-ford, Agner acquired or transferred an interest in the claim “for the purpose of commencing an involuntary case” in violation of Bankruptcy Rule 1003(a). The bankruptcy court concluded, “[t]here can be no question but that the Agreement was executed and implemented for the purpose of commencing an involuntary case against McMillan.” Therefore, Ag-ner, Schmidt, and Wafford were not qualified creditors to petition for involuntary bankruptcy under § 303.
In reaching this disposition, the bankruptcy court noted that “the Case is but another battle in an ongoing war between McMillan and ... Sun River,” and that it “was commenced principally at the insistence] of Sun River as a tactical measure in its disputes with McMillan.” Ater examining the Agreement, the bankruptcy court concluded that “control over prosecution of the involuntary case against McMillan is largely ceded to Schmidt and Waf-ford,” who “have the power under the Agreement to force and maintain prosecution of the Case.” Finally, the court found that “Schmidt and Wafford sought out [Áigner] with the goal of forcing McMillan into bankruptcy.” Sun River, it concluded, is “the true prime mover for involuntary relief.” •
The bankruptcy court determined that Agner filed the § 303 petition in good faith. Yet it noted in footnote twenty of the order: “This is not to say that Sun River, Schmidt, and Wafford did not áct other than in good faith, but they are not petitioners and are therefore not before the court.” It is this last determination that McMillan appeals.
Reviewing the bankruptcy court’s conclusions of law de novo and its factual findings for clear error, the district court *209 affirmed, reaching two alternative resolutions. First, the district court held that as neither Schmidt nor Wafford was served with process in accordance with Bankruptcy Rule 7004(b)(1), “the bankruptcy court never had in personam jurisdiction over Schmidt and Wafford, because they had not appeared as parties in the proceeding below.” Therefore, “absent compliance with Rule 7004(b)(1), entertaining McMillan’s appeal would offend due process.” Second, although the district court found it “unnecessary” to address the bankruptcy court’s ruling that Schmidt and Waf-ford were not petitioners, and therefore performed no independent analysis of the legal question, it concluded that “the bankruptcy court did not commit reversible error in concluding that Schmidt and Wafford were not ‘petitioners,’ and in declining to award relief under Section 303(i) against them.”
Before this Court, McMillan argues that (1) Schmidt and Wafford are “petitioners” within the meaning of ,§ 303(i) and (2) the bankruptcy court may impose costs, fees, and damages on Schmidt and Wafford without McMillan having to commence an adversarial proceeding against the Appel-lees under Rule 7004(b)(1).
II. DISCUSSION
This Court has jurisdiction over McMillan’s appeal of the district court’s review of a bankruptcy court’s final order under 28 U.S.C. § 158(d)(1). This Court reviews the district court’s decision “by applying the same standard of review to the bankruptcy court’s conclusions of law and findings of fact that the district court applied.” In re Cahill, 428 F.3d 536, 539 (5th Cir.2005) (per curiam). “[Cjonclusions of law are reviewed de novo, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed de novo.” In re Nat’l Gypsum Co., 208 F.3d 498, 504 (5th Cir.2000).
Section 303 of the Bankruptcy Code governs petitions for involuntary bankruptcy. “An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title” by an entity holding an undisputed, bona fide claim against the alleged debtor. 11 U.S.C. § 303(b). After the petition is filed, “a creditor holding an unsecured claim that is not contingent ... may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.” § 303(c) (emphasis added). Therefore, a “petitioning creditor” is an entity that files a petition under § 303(b) or one who joins the petition under § 303(c).
Rule 1003, using the word “petitioner” and not “petitioning creditor,” imposes a limitation on involuntary bankruptcy: “An entity that has transferred or acquired a claim for the purpose of commencing a case for liquidation under chapter 7 or for reorganization under chapter 11 shall not be a qualified petitioner.” Fed. R. Bankr.P. 1003(a). If an alleged debtor succeeds in getting the petition against him dismissed, then § 303(i) permits the alleged debtor to collect fees, costs, and damages from his petitioners:
(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
(1) against the petitioners and in favor of the debtor for—
(A) costs; or
(B) a reasonable attorney’s fee; or
(2) against any petitioner that filed the petition in bad faith, for—
*210 (A) any damages proximately caused by such filing; or
(B) punitive damages.
Ordinarily, an alleged involuntary debtor may collect fees under § 303(i) by filing a motion with the bankruptcy court. See Fed. R. Bankr.P. 9014 (“In a contested matter ... relief shall be requested by motion... .”)• Bankruptcy procedure distinguishes a contested matter — such as a petition for involuntary bankruptcy — from an adversary proceeding. See Fed. R. Bankr.P. 7001 (explaining that “a proceeding to recover money or property” is an adversary proceeding); Fed. R. Bankr.P. 9014 advisory committee’s note (“Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter.”).
At issue in this appeal is whether McMillan may collect the fees authorized by § 303(i) from Schmidt and Wafford— who did not sign the original petition for involuntary bankruptcy — -and whether he may do so without beginning an adversary proceeding.[2]
McMillan contends that he may recover fees and damages from Schmidt and Wafford because they are “petitioners” under § 303(i). Relying on Rosenberg v. DVI Receivables, XIV, LLC (In re Rosenberg), 471 B.R. 307 (Bankr.S.D.Fla.2012), and In re Oakley Custom Homes, Inc., 168 B.R. 232 (Bankr.D.Colo.1994), McMillan argues that “petitioner” is a broader category than “petitioning creditor,” and therefore that he may recover from people or entities that caused his involuntary petition to be filed. Cf. In re Rosenberg, 779 F.3d 1254, 1268-69 (11th Cir.2015) (affirming the bankruptcy court’s award of fees from an entity it concluded was the “de facto petitioning creditor” though not a signatory to the original involuntary petition). McMillan stresses Rule 1003 contemplates that entities other than “petitioning creditors” may be integral to filing a petition for involuntary bankruptcy, and he invites this Court to define “petitioner” with reference to state-law agency principles.
We make no pronouncement today on whether the meaning of “petitioner” may be broader than “petitioning creditor” under the bankruptcy code. Instead, we hold that only “petitioning creditors” — i.e., entities that file a petition under § 303(b) or join it under § 303(c) — are parties to the contested matter and therefore properly before the bankruptcy court on a motion for fees. See DVI Receivables XIV, LLC v. Rosenberg, 500 B.R. 174, 177 (S.D.Fla.2013) (noting that the bankruptcy court “ordered Rosenberg to convert the Motion into an adversary complaint — or, in the alternative, to withdraw the Motion and file a new adversary complaint — so that the court could have jurisdiction over these additional parties” and that Rosenberg obliged).
Schmidt and Wafford were not signatories to the original involuntary petition; therefore, they are not parties to the contested matter, and McMillan must serve them with process to bring them within the jurisdiction of the bankruptcy court. Because he seeks to “recover money” from the Appellees, McMillan’s action is properly brought as an adversary proceeding under Rule 7001.[3] We agree with *211 the district court that McMillan must serve Schmidt and Wafford with a summons and a complaint in accordance with Bankruptcy Rule 7004(b)(1) to subject them to the jurisdiction of the bankruptcy court.
III. CONCLUSION
For the foregoing reason, we AFFIRM the district court’s dismissal of McMillan’s motion for fees.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir.. R. 47.5.4.

. Before the district court affirmed, it granted a motion to dismiss with prejudice all claims against Aigner.

. Rule 7004 provides the requirements for service of process in an adversary proceeding, which begins with a summons.

. See, e.g., In re Dean, 359 B.R. 218, 222 (Bankr.C.D.Ill.2006) (collecting cases and noting that "[s]everal courts have held that if a party seeks recovery of damages ... this falls within Rule 7001(1) and the matter *211 should be brought as an adversary proceeding”).