[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15883

_____

D.C. Docket Nos. 1:10-cv-03081-CLS; 1:10-bk-40227-JJR7

In Re: ROBERT ALAN WITCHER,
        JENNIFER WITCHER,

                        Debtors,

_____

ROBERT ALAN WITCHER,
JENNIFER WITCHER,

                        Plaintiffs - Appellants,
versus

VALERY W. EARLY, III,

                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(December 13, 2012)

Before DUBINA, Chief Judge, CARNES and GILMAN,[*] Circuit Judges.

GILMAN, Circuit Judge:

The question in this case is whether a court may take into account a debtor's ability to pay his or her debts in determining whether "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse" of chapter 7 of the Bankruptcy Code under 11 U.S.C. § 707(b)(3)(B). We hold that the court may do so. The judgment of the district court is therefore **AFFIRMED**.

## I.    BACKGROUND

Robert Alan Witcher and Jennifer Witcher filed for chapter 7 bankruptcy in January 2010. The bankruptcy administrator moved to dismiss the case or convert it to chapter 13 on the ground that the Witchers' bankruptcy petition constituted an abuse of the chapter 7 process. In ruling on the motion, the bankruptcy court first found no presumption of abuse by the Witchers under the "means test" contained in 11 U.S.C. § 707(b)(2). The means test is a complex statutory formula based on the debtor's monthly income modified by various amounts that are set forth in that subsection. Next, the court considered the "totality of the circumstances" test set

---

[*] Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

forth in 11 U.S.C. § 707(b)(3)(B) and found, under this second test, that the Witchers' bankruptcy petition demonstrated abuse.

The primary factor that the court relied upon to support its conclusion was its finding that the Witchers had kept certain luxury items—including a camper, a boat, a trailer, and a tractor—and had continued making payments on these items to their secured creditors. It determined that "the Debtors' ability to pay, as well as their reluctance to change their lifestyle in order to provide a distribution to creditors, together indicate that granting relief in this chapter 7 case would be an abuse." Because "a meaningful distribution to unsecured creditors could be made by simply surrendering those items that are being kept for merely recreational purposes," reasoned the court, the Witchers' decision to keep paying for these "unnecessary, luxury items" showed that they were not prepared to earnestly engage in the "give and take process" of bankruptcy. The court accordingly gave the Witchers 14 days to convert their case to chapter 13. When they failed to do so, the court dismissed the case.

The Witchers subsequently moved to amend or alter the order of conversion based on a change in their financial circumstances due to Mr. Witcher's loss of employment. After a hearing, the bankruptcy court found that the alleged change in circumstances was not material and therefore denied the motion, again giving the Witchers 14 days to convert.

3

The Witchers appealed the order of conversion to the district court. They contested the bankruptcy court's consideration of their ability to pay their debts under the totality-of-the-circumstances analysis of § 707(b)(3)(B), but did not contest the bankruptcy court's factual findings or its failure to find a meaningful change in circumstances. The district court affirmed, finding that the Witchers' argument that ability to pay may not be considered as part of the totality of the circumstances contradicts the plain text of § 707 and the overwhelming weight of authority. On appeal, the Witchers contend that both the bankruptcy court and the district court erred in considering their ability to pay their debts as part of the totality of the circumstances.

## II.    ANALYSIS

### A.    Standard of review

Because this appeal raises purely legal questions, our review is de novo. *See In re Glados, Inc.*, 83 F.3d 1360, 1362 (11th Cir. 1996).

### B.    Discussion

Section 707 of the Bankruptcy Code, 11 U.S.C. § 707, sets forth the circumstances under which a court may dismiss a chapter 7 case or, with the debtor's consent, convert it into a chapter 11 or a chapter 13 case. One of the grounds justifying dismissal or conversion is a court's finding that "the granting of

4

relief [i.e., bankruptcy discharge] would be an abuse of the provisions" of chapter 7.  11 U.S.C. § 707(b)(1).

The present case concerns §§ 707(b)(2) and 707(b)(3).  Under § 707(b)(2), "the court shall presume abuse" of chapter 7 if the debtor runs afoul of the so-called "means test."  The means test takes into account a great many factors, including the debtor's payment of secured debts as calculated by a statutory formula.  *See* 11 U.S.C. § 707(b)(2)(A)(iii).  If a presumption of abuse arises under the means test and is not rebutted, the court may dismiss or convert the chapter 7 case.  *See* 11 U.S.C. §§ 707(b)(1), 707(b)(2).

Subsection 707(b)(3) comes into play when the presumption of abuse under 707(b)(2) does not arise or is rebutted.  Under § 707(b)(3), the court shall consider "whether the debtor filed the petition in bad faith," § 707(b)(3)(A), or whether "the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse," § 707(b)(3)(B).

In the present case, the bankruptcy court found that the Witchers did not run afoul of the means test under § 707(b)(2) but failed the totality-of-the-circumstances test under § 707(b)(3)(B).  It held that the Witchers' failure was due primarily to the fact that they were able to pay their secured debts on a number of luxury items.  The sole question presented on appeal is whether consideration of

5

the debtors' ability to pay their debts under § 707(b)(2) precludes consideration of their ability to pay under § 707(b)(3)(B).

The Witchers contend that ability to pay should not be considered under the totality-of-the-circumstances test because such a consideration would render the means test meaningless. They argue that there would be no point to the complex formula crafted by Congress in the means test if a court could take the same factors that are incorporated in that formula and plug them into the totality-of-the-circumstances test. The Witchers rely on *In re Walker*, 381 B.R. 620, 624 (Bankr. M.D. Pa. 2008), for the proposition that "inclusion of the income and expenses calculation in § 707(b)(2) precludes reconsideration of income and expenses in § 707(b)(3) pursuant to the canon of negative implication."

We disagree with the Witchers' narrow reading of § 707(b)(3)(B). To begin with, the text of § 707(b)(3)(B) broadly refers to "the totality of the circumstances . . . of the debtor's financial situation," phrasing which is surely intended to include the debtor's ability to pay his or her debts.

Moreover, although the Witchers are correct that allowing each bankruptcy court to devise its own subjective means test under § 707(b)(3) would defeat the purpose of the congressionally enacted means test in § 707(b)(2), the same logic does not dictate that any factors that are considered under § 707(b)(2) are by implication precluded from consideration under § 707(b)(3). If Congress had

6

intended such preclusion, it could have easily said so.  Congress could have, for example, drafted § 707(b)(3)(B) to read that "the court shall consider . . . the totality of the circumstances . . . of the debtor's financial situation—*except for the circumstances that the court has already considered under § 707(b)(2)*."  But that is not what Congress enacted; the italicized language is not actually in the statute, and we decline to add it by judicial interpretation.

Our examination of the structure and textual evolution of § 707 further bolsters our reading of the statute.  The current version of § 707 is largely a product of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).  BAPCPA made it harder to obtain chapter 7 relief by eliminating the "presumption in favor of granting the relief requested by the debtor" that had existed in the previous version of § 707(b), adding a means test that created a presumption of abuse, and lowering the standard from "substantial abuse" to "abuse."

The phrase "totality of the circumstances" was not in the pre-BAPCPA statute, but it was the pre-BAPCPA standard used by many courts across the country in determining whether there had been a substantial abuse of chapter 7.  These courts uniformly took the ability to pay into account in examining the totality of the circumstances.  For example, the courts in *In re Lamanna*, 153 F.3d 1, 4-5 (1st Cir. 1998), *In re Green*, 934 F.2d 568, 572 (4th Cir. 1991), and *In re*

*Krohn*, 886 F.2d 123, 126 (6th Cir. 1989), all used the totality-of-the-circumstances formulation and held that a debtor's ability to pay his or her debts is a factor to be considered in deciding whether there has been substantial abuse. And the courts in *United States Trustee v. Harris*, 960 F.2d 74, 77 (8th Cir. 1992), and *In re Kelly*, 841 F.2d 908, 914 (9th Cir. 1988), although not utilizing the totality-of-the-circumstances formulation, nevertheless held that the ability to pay is a factor to be considered in deciding whether there has been substantial abuse.

Congress was doubtless aware when it codified the totality-of-the-circumstances standard that the relevant pre-BAPCPA jurisprudence took into consideration a debtor's ability to pay his or her debts. *See, e.g.*, *Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("[W]here . . . Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute."). Accordingly, if Congress had intended to preclude such consideration, it presumably would have explicitly said so. The absence of an explicit preclusion regarding the ability to pay under § 707(b)(3)(B) in the face of Congress's awareness of judicial inclusion of the same factor under prior law indicates that Congress did not intend to preclude such consideration.

The Witchers' "negative implication" argument is therefore unpersuasive. Their extensive citations to legislative history are similarly unavailing because

8

these materials pertain either to other provisions of the Bankruptcy Code or to the pre-amendment version of § 707, and thus shed no light on the relationship between current §§ 707(b)(2) and 707(b)(3).

We therefore hold that a debtor's ability to pay his or her debts may be taken into account under the totality-of-the-circumstances test set forth in 11 U.S.C. § 707(b)(3)(B).  With the exception of *In re Walker*, 381 B.R. 620 (Bankr. M.D. Pa. 2008), every single court we know of to consider the question has reached the same conclusion.  *See In re Reed*, 422 B.R. 214, 233 (C.D. Cal. 2009); *In re Lanza*, 450 B.R. 81, 86-87 (Bankr. M.D. Penn. 2011); *In re Keller*, No. 09-21519, 2010 WL 4386850, at *2 (Sep. 2, 2010 Bankr. S.D. Ga.); *In re Perelman*, 419 B.R. 168, 176 (Bankr. E.D.N.Y. 2009); *In re James*, 414 B.R. 901, 914 (Bankr. S.D. Ga. 2008); *In re Talley*, 389 B.R. 741, 745 (Bankr. W.D. Wash. 2008); *In re Cribbs*, 387 B.R. 324, 334 (Bankr. S.D. Ga. 2008); *In re Barnett*, No. 06-62414, 2007 WL 4510277, at *4 (Dec. 18, 2007 Bankr. N.D. Ohio); *In re Henebury*, 361 B.R. 595, 607 (Bankr. S.D. Fl. 2007); *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007); *In re Lenton*, 358 B.R. 651, 664 (Bankr. E.D. Penn. 2006); *In re Nockerts*, 357 B.R. 497, 507 (Bankr. E.D. Wis. 2006); *In re Pak*, 343 B.R. 239, 244 (Bankr. N.D. Cal. 2006).

**C.   The scope of our holding**

9

Before concluding, we wish to emphasize the limited nature of our holding. We do not decide whether a debtor's ability to pay his or her debts can alone be dispositive under the totality-of-the-circumstances test. Nor do we decide how much weight a bankruptcy court may properly give to the debtor's ability to pay as compared with other factors making up the totality of the circumstances. The questions of whether the ability to pay may be dispositive and, if not, what weight it should be given as compared to other factors, were debated in the pre-BAPCPA caselaw, *compare, e.g.*, *Green*, 934 F.2d at 572 (indicating that the ability to pay is the "primary" factor to be considered, but holding that it should be considered alongside other factors), *with Harris*, 960 F.2d at 77 (holding that the ability to pay alone may be a sufficient reason for finding abuse, and rejecting the "sweeping and free ranging inquiry" in *Green*), and they continue to be debated post-BAPCPA, *compare, e.g.*, *Cribbs*, 387 B.R. at 334 ("[T]he Trustee must show more than just Debtors' ability to pay."), *with Henebury*, 361 B.R. at 607 ("[T]he ability to pay, standing alone, is sufficient.").

But the Witchers do not raise these questions. Instead, they argue that their ability to pay their secured creditors should not have been taken into account at all under § 707(b)(3)(B). Accordingly, we construe the present appeal to raise only the narrow question that we have answered above.

## III.   CONCLUSION

For all of the reasons set forth above, the judgment of the district court is

**AFFIRMED**.

11