[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11506

_____

D.C. Docket Nos. 1:15-cv-20376-JEM; 11-bkc-16703-LMI

STRATTON C. POLLITZER,

Plaintiff-Appellant,

versus

GUY G. GEBHARDT,
Acting United States Trustee,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 27, 2017)

Before ED CARNES, Chief Judge, ANDERSON, and PARKER,[*] Circuit Judges.

_____

[*] Honorable Barrington D. Parker, Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

PARKER, Circuit Judge:

Section 707(b) of the Bankruptcy Code allows a bankruptcy court to dismiss a petition filed under Chapter 7 if it determines that relief would be an "abuse" within the meaning of that section.  11 U.S.C. § 707(b).  In this appeal from a judgment of the United States District Court for the Southern District of Florida (Martinez, *J.*), we consider whether § 707(b) applies to a petition that was initially filed under Chapter 13 but later converted to a petition under Chapter 7.  We conclude that the provision applies and therefore we affirm the district court.

## I.

In March 2011, Stratton Pollitzer filed for bankruptcy relief under Chapter 13 of the Code.  Under Chapter 13, a debtor such as Pollitzer who aims to restructure his debts may retain his assets but must submit a plan to repay his debts over a three- to five-year period.  The payments are generally made from the debtor's future earnings or income.  *See Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015).  Pollitzer submitted a Chapter 13 repayment plan and made the required payments for more than two years but then exercised his right under § 1307 of the Code to convert his case to Chapter 7.  11 U.S.C. § 1307.

In contrast to Chapter 13, Chapter 7 requires a debtor to transfer nearly all of his prepetition assets to the bankruptcy court for distribution to creditors, but

2

allows the debtor to shield from creditors postpetition income and assets. In sum, unlike Chapter 13 claimants, individuals who file under Chapter 7 liquidate their nonexempt assets rather than dedicate their future income to repay creditors. *See Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 65 n.1 (2011). Consequently, while a Chapter 7 debtor must forfeit virtually all his prepetition property, he is able to make a "fresh start" by shielding his postpetition earnings from creditors. *Harris*, 135 S. Ct. at 1835. An important distinction between Chapters 7 and 13 is that Chapter 7 was not designed for debtors with repayment ability: *i.e.*, those with sufficient income to repay their debts over time.

Congress believed that debtors who could make such payments were abusing the Code by filing under Chapter 7 which extinguished debts they could otherwise pay from postpetition income. To help insure this did not occur, Congress passed § 707(b) specifically to emphasize the responsibility of courts to dismiss Chapter 7 cases filed by debtors with repayment ability.

Section 707(b)(1) provides that:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, . . . may dismiss a case filed by an individual debtor under this chapter. . . if it finds that the granting of relief would be an abuse of the provisions of this chapter.

3

11 U.S.C. § 707(b)(1).  To determine whether relief would be an abuse of Chapter 7, the statute creates a means-test codified at 11 U.S.C. § 707(b)(2)(A)(i).  The means-test, if met, requires the court to presume the petition to be abusive.

After Pollitzer converted his petition, the U.S. Trustee moved to dismiss it as abusive under § 707(b).  The Trustee contended that Pollitzer's disposable income, which far exceeded the means-test, would allow for a significant dividend to unsecured creditors.  Pollitzer opposed the motion on the sole ground that § 707(b) does not apply to petitions initially filed under Chapter 13 and later converted to Chapter 7.  Pollitzer concedes that his petition fails to satisfy the means-test and that his petition would be subject to dismissal as an abusive petition if § 707(b) applied.[1]  The bankruptcy court concluded that § 707(b) applied to converted cases and dismissed the petition.  The district court affirmed and this appeal followed.  Interpretations of the Code are questions of law that we review *de novo*.  *In re Tanner Family, LLC*, 556 F.3d 1194, 1195–96 (11th Cir. 2009).

Pollitzer's argument is textual.  He points to the language of § 707(b) limiting it to "a case filed by an individual debtor under this chapter" and reads the phrase "under this chapter" as modifying the phrase "a case filed."  Because, he

---

[1]    Currently, § 707(b)(2)(A)(i)'s formula provides that a presumption of abuse never arises where a debtor's disposable monthly income is less than $128.33; that it always arises if such income is more than $214.17; and, if such income is within the range of $128.33–$214.17, the presumption arises only if the debtor's non-priority unsecured debt exceeds a specific sum.  *See* Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 Am. Bankr. L. J. 231, 241–42 (2005).  Pollitzer had a disposable monthly income of at least $1,500.  *See* U.S. Trustee App'x at 4, 13; Pollitzer App'x at 68.

argues, his was not a "case filed . . . under this chapter [Chapter 7]," but rather was filed under Chapter 13, § 707(b) does not apply. The U.S. Trustee also makes a textual argument. He contends that "under this chapter" modifies the phrase to which it is immediately adjacent, "an individual debtor." And, the argument goes, because Pollitzer is an "individual debtor under [Chapter 7]," § 707(b) applies.

## A.

From the standpoint of text and grammar, both parties' readings of § 707(b) are defensible. Nevertheless, we are required to avoid an interpretation of that provision that would lead to consequences that are inconsistent with the statutory scheme under review. *See In re Welzel*, 275 F.3d 1308, 1314 (11th Cir. 2001). Because there are unmistakable indications in the Code that Congress intended § 707(b) to apply to converted cases, we reject Pollitzer's arguments.

We begin with the "textual evolution of § 707." *In re Witcher*, 702 F.3d 619, 622 (11th Cir. 2012). Congress initially passed § 707(b) as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("the 1984 Act"). *See In re Piazza*, 719 F.3d 1253, 1269 (11th Cir. 2013). Although bankruptcy courts always had the option of dismissing petitions "for cause," the 1984 Act for the first time allowed courts specifically to dismiss Chapter 7 petitions if it found them "substantially abusive." 11 U.S.C. § 707(b) (1984). Congress added this provision because it believed that the bankruptcy courts were insufficiently

5

invoking the "for cause" provision to dismiss petitions filed by a growing number of Chapter 7 debtors that had income sufficient to pay their creditors. *In re Piazza*, 719 F.3d at 1269. Specifically addressing this point, we concluded that Congress passed the "substantial abuse" provision "in response to . . . judicial abdication of authority." *Id.* We reasoned that "although courts dismissed cases 'for cause' under the original § 707 based on prepetition bad faith, they were not doing so as readily as Congress would have preferred in the context of consumer debts." *Id.* One commentator has noted that Congress's ultimate goal was clear: following widespread and documented abuses of Chapter 7 by consumer debtors with significant ability to repay their debts, Congress specifically intended § 707(b) to be a "limitation of access to chapter 7 by debtors with a substantial debt repayment capacity." Irving A. Breitowitz, *New Developments in Consumer Bankruptcy: Chapter 7 Dismissal on the Basis of "Substantial Abuse"*, 59 Amer. Bankr. L. J. 327 (1985).

Nevertheless, two decades after passage of the 1984 Act, Congress was of the view that the "substantial abuse" provision did not go far enough in limiting the number of Chapter 7 petitions filed by debtors with repayment ability. *See In re Witcher*, 702 F.3d at 622. Consequently, Congress significantly strengthened § 707(b) in 2005 through the Bankruptcy Abuse Prevention and Consumer

Protection Act ("BAPCPA"), which made it even easier for bankruptcy courts to dismiss abusive petitions.  As we have stated, the

> current version of § 707 is largely a product of [BAPCPA, which] . . . made it harder to obtain chapter 7 relief by eliminating the 'presumption in favor of granting the relief requested by the debtor that had existed in the previous version of § 707(b), adding a means test that created a presumption of abuse, and lowering the standard from 'substantial abuse' to 'abuse.'

*Id.*

This history and statutory evolution demonstrates that Congress intended the current version of § 707(b) to be a potent tool for bankruptcy courts to expeditiously  dismiss Chapter 7 petitions filed by debtors with income sufficient to pay their creditors.  This goal would be eviscerated were we to adopt Pollitzer's interpretation under which a debtor could file a Chapter 13 petition and, the following day, convert it to a Chapter 7 petition and thereby avoid the abuse review Congress incorporated  into § 707(b).[2]  *See* 11 U.S.C. § 1307.  We find it unlikely—indeed  inconceivable—that  Congress  contemplated,  much  less authorized, such a result.

---

[2]   The Supreme Court has made clear that Congress intended conversion from Chapter 13 to Chapter 7 to be easy and widely available (largely because many debtors "fail to complete a Chapter 13 plan successfully").  *Harris*, 135 S. Ct. at 1836.  "Recognizing that reality, Congress accorded debtors a nonwaivable right to convert a Chapter 13 case to one under Chapter 7 'at any time.' § 1307(a).  To effectuate a conversion, a debtor need only file a notice with the bankruptcy court.  No motion or court order is needed to render the conversion effective."  *Id.* at 1835–36 (internal citation omitted).

Pollitzer offers nothing that convinces us that the removal of converted cases from the review for abuse of § 707(b) is a sound or reasonable application of the Code. His sole response is that removal of converted cases from § 707(b) is not problematic because there are other ways to deal with bad-faith debtors, such as 11 U.S.C. § 105(a). *See In re Layton*, 480 B.R. 392, 397 (Bankr. M.D. Fla. 2012). That provision allows a court to dismiss a bankruptcy case "to prevent an abuse of process." 11 U.S.C. § 105(a). We are not convinced. As discussed, Congress passed § 707(b) precisely because the "for cause" basis for dismissal under the original § 707 did not work as readily as Congress would have preferred. And, BAPCPA was specifically directed at what Congress viewed as the bankruptcy courts' continued reluctance to dismiss petitions filed by debtors with repayment ability. Excluding converted cases from § 707(b) would, in effect, read this important remedial provision out of the Code, and we reject interpretations of the Code that would produce such absurd results. *See In re Lehman*, 205 F.3d 1255, 1255–56 (11th Cir. 2000); *see also Durr v. Shinseki*, 638 F.3d 1342, 1349 (11th Cir. 2011).

## B.

Moreover, when interpreting statutory provisions, we do not, as Pollitzer would have us do, review language in isolation. Rather, we consider the language, the specific context in which that language is used, and the broader context of the

8

statute as a whole.  *Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir. 2009).   For several reasons, this approach reinforces our conclusion.

First, Congress expressly excluded converted cases from the reach of other sections of the Code, but not from § 707(b).  Chapter 12, for example, provides that "[o]n request of the debtor at any time*, if the case has not been converted under section 706 or 1112 of this title*, the court shall dismiss a case under this chapter."   11 U.S.C. § 1208(b) (emphasis added); *see also* 11 U.S.C. § 1307(b). We have been clear that when, as with § 1208(b), Congress includes particular language in one section of a statute but omits it in another section of the same act, it is presumed that Congress did so intentionally.  *See U.S. v. Alabama*, 778 F.3d 926, 933 (11th Cir. 2015).

Second, Congress knew how to exclude certain categories of cases from provisions within § 707(b) but did not do so with converted cases.  Specifically, certain petitions filed by disabled veterans or those recently released from active duty are expressly exempted from § 707(b)(2)'s means-test.  *See* 11 U.S.C. § 707(2)(D). Given that Congress took care to craft specific exclusions for certain debtors from § 707(b)'s means-testing, we are loath to infer the wholesale exclusion of converted petitions.  *See Toibb v. Radloff*, 501 U.S. 157, 160–161 (1991).

Finally, we find it persuasive that when Congress passed BAPCPA, it left unaffected Federal Rule of Bankruptcy Procedure 1019(2)(A), which sets a new time period for filing a motion under § 707(b) in a case that has been converted from Chapter 13 to Chapter 7.[3]   Congress, we must presume, was aware of Bankruptcy Rule 1019(2)(A) when it legislated, and the Rule would be unintelligible if § 707(b) did not apply to converted cases. *See Lorillard v. Pons*, 434 U.S. 575, 580 (1978). As the Supreme Court has explained, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Id*.; *see also Hamilton v. Lanning*, 560 U.S. 505, 516 (2010) ("Pre-BAPCPA bankruptcy practice is telling because we will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure").

## CONCLUSION

The judgment of the district court is AFFIRMED.

---

[3]  "When a chapter 11, chapter 12, or chapter 13 case has been converted or reconverted to a chapter 7 case . . . [a] new time period for filing a motion under §707(b) . . . shall commence." Fed. R. Bankr. 1019(2).