[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16789

_____

D.C. Docket No. 1:13-cv-00258-CB-B,
BKCY No. 11-bkc-00096-WWS

In re:    RICHARD D. HORNE,
          PATRICIA NELSON HORNE,

Debtors,
_____

MARY BETH MANTIPLY,

Plaintiff-Appellant,

versus

RICHARD D. HORNE,

Defendant,

PATRICIA NELSON HORNE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(December 5, 2017)

Before ED CARNES, Chief Judge and BLACK, Circuit Judge, and MAY,[*] District Judge.

MAY, District Judge:

Mary Mantiply appeals the district court's order awarding Richard and Patricia Horne[1] the attorneys' fees and costs that they incurred because of her unsuccessful appeal of the damages award to the Hornes for her violation of the Bankruptcy Code's automatic stay provision. This case involves an issue of first impression in this Circuit: whether the Bankruptcy Code authorizes payment of attorneys' fees and costs incurred by debtors in successfully pursuing an action for damages resulting from the violation of the automatic stay and in defending the damages award on appeal. After careful consideration, and with the benefit of oral argument, we affirm the district court.

## I. BACKGROUND

The Hornes filed for Chapter 7 bankruptcy on January 10, 2011. In re Horne, 630 F. App'x 908, 909 (11th Cir. 2015) (per curiam) (unpublished). They were discharged from bankruptcy on May 10, 2011. Id. The filing of the Hornes' bankruptcy triggered an automatic stay of any litigation against them under 11 U.S.C. § 362(a)(1). Id. Despite the stay, however, Ms. Mantiply—an attorney—

---

[*] Honorable Leigh Martin May, United States District Judge for the Northern District of Georgia, sitting by designation.

[1] Richard Horne passed away during the proceedings of this litigation. Ms. Horne was substituted as his personal representative. For the sake of clarity, we refer to Mr. and Ms. Horne collectively in this opinion as the Hornes.

filed a civil action on behalf of her clients against Mr. Horne in state court. See id. And even after being informed of the stay, Ms. Mantiply repeatedly refused to voluntarily dismiss the action she had filed. Id. Eventually it was dismissed in November 2011. Id.

The Hornes filed a motion in the bankruptcy court seeking damages for Ms. Mantiply's violation of the automatic stay under Section 362(k)(1). Id. The bankruptcy court awarded the Hornes $81,714.31 in damages, including $41,714.31 in attorneys' fees. Id. Ms. Mantiply appealed that decision to the district court, which affirmed and also awarded the Hornes an additional $34,551.28 in attorneys' fees incurred in the appeal of the damages award. Id.

Ms. Mantiply then filed two identical motions in the bankruptcy court and the district court seeking the bankruptcy judge's recusal.[2] Id. at 910. The bankruptcy court denied Ms. Mantiply's recusal motion. Id. Ms. Mantiply appealed that decision to the district court, which affirmed but denied the Hornes' motion for attorneys' fees incurred in defending the appeal of the recusal order. Id.

Ms. Mantiply appealed the district court's affirmance of her denied recusal motion, and the Hornes cross-appealed the district court's denial of their motion for attorneys' fees incurred defending the recusal order on appeal to the district court. Id. This Court affirmed in part and remanded. Id. at 913–14. First, we

---

[2] Specifically, Ms. Mantiply argued the bankruptcy judge was biased because the judge's courtroom deputy was the sister of the Hornes' bankruptcy counsel's paralegal. Id.

3

affirmed the district court's conclusion that the bankruptcy judge's recusal was not required in this case. Id. at 910–12. Second, we remanded for the district court to either award the Hornes attorneys' fees under the mandatory fees provision of Section 362(k), or explain why the recusal motion did not involve litigation over the stay violation and thus did not entitle the Hornes to attorneys' fees. Id. at 912–13. On remand, the district court found that the Hornes' requested attorneys' fees were indeed mandatory and awarded an additional $14,918.60 to the Hornes.

Meanwhile, Ms. Mantiply petitioned for a writ of certiorari with the Supreme Court to review this Court's decision affirming the denial of her recusal motion. The Hornes filed a brief in response. The Supreme Court denied Ms. Mantiply's petition on June 27, 2016.

The Hornes then filed motions with this Court for attorneys' fees incurred in defending against Ms. Mantiply's appeal to the Eleventh Circuit as well as her petition for certiorari (collectively, the "appellate fees"). We *sua sponte* transferred those motions to the district court to consider in the first instance whether the Hornes were legally entitled to their requested appellate fees and, if so, whether they were reasonable. The district court found that the Hornes were entitled to the appellate fees and that they were reasonable. In determining that the requested appellate fees were reasonable, the district court pointed out that the amount of fees and costs, while large, was reasonable given the time and labor required to

4

defend Ms. Mantiply's many appeals. The district court also found that the skill and experience required of counsel in defending the appeals, the favorable results obtained, and the undesirability of the case—which required undertaking legal action against a fellow lawyer—supported finding the requested attorneys' fees to be reasonable as well. Based on these findings, the district court awarded the Hornes appellate fees and costs of $92,495.86. This appeal followed.

## II. APPELLATE FEES

We first address Ms. Mantiply's main argument that the Hornes were not entitled to appellate fees as a matter of law under Section 362(k)(1). She contends that the statute provides mandatory fees for damages and attorneys' fees incurred in ending a stay violation, but not attorneys' fees incurred in pursuing a damages award nor fees incurred in defending that award on appeal. We review *de novo* an interpretation of the Bankruptcy Code, which is a question of law. Pollitzer v. Gebhardt, 860 F.3d 1334, 1338 (11th Cir. 2017).

As set out above, once the Hornes filed for Chapter 7 bankruptcy, an automatic stay took effect. See 11 U.S.C. § 362(a)(1). It is undisputed that Ms. Mantiply willfully violated this automatic stay. When willful violations occur, Section 362(k)(1) provides that:

> (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section *shall recover actual damages, including costs and attorneys' fees*, and, in appropriate circumstances, may recover punitive damages.

5

Id. § 362(k)(1) (emphasis added).

Ms. Mantiply relies primarily on the Supreme Court's recent decision in Baker Botts L.L.P. v. ASARCO LLC, 576 U.S. ___, 135 S. Ct. 2158 (2015), which warned that courts should not depart from the American Rule—"the rule that each side must pay its own attorney's fees"—absent explicit statutory authority. Id. at 2163–64. In ASARCO, the Supreme Court held that Section 330(a)(1) of the Bankruptcy Code, which states that a bankruptcy court "may award . . . reasonable compensation for actual, necessary services rendered by" certain types of professionals (one of which is attorneys), was not a fee-shifting statute. Id. (quoting 11 U.S.C. § 330(a)(1)). The Supreme Court reasoned that the statute's plain language indicated that an attorney could receive payment for fees incurred in service of a bankruptcy estate, but was not explicit enough to extend to time spent litigating a fee application against an administrator of a bankruptcy estate. See id. at 2164–65. The latter, the Supreme Court explained, could not fall within Section 330(a)(1)'s text, which required service rendered to the estate. Id. at 2165.

In stark contrast to Section 330(a)(1), Section 362(k)(1) of the Bankruptcy Code specifically and explicitly contemplates at least some departure from the American Rule by including "costs and attorneys' fees" in the damages due to an individual injured by a willful violation of an automatic bankruptcy stay. 11 U.S.C. § 362(k)(1); see also Jove Eng'g, Inc. v. IRS, 92 F.3d 1539, 1559 (11th Cir. 1996)

6

(describing the attorneys' fees imposed by Section 362(k)(1) as "mandatory").

Even Ms. Mantiply concedes that Section 362(k) authorizes a departure from the

American Rule to the extent that it shifts fees incurred in ending a violation of an

automatic stay. But we have never had occasion to examine the legal question Ms.

Mantiply's appeal raises—that is, the precise scope of the fees. Relying on

ASARCO, Ms. Mantiply argues we must read Section 362(k) narrowly against the

background presumption of the American Rule and allow attorneys' fees to be

shifted under this statute only when they are incurred in ending the stay violation,

not in pursuing the damages remedy or defending the judgment on appeal.

We start with the text. Section 362(k)(1) specifically provides for the

recovery of "actual damages, including costs and attorneys' fees." 11 U.S.C.

§ 362(k). This Court has recognized that "[u]nlike general, special, and

compensatory damages, [] 'actual damages' has no consistent legal interpretation."

Fitzpatrick v. IRS, 665 F.2d 327, 329 (11th Cir. 1982), abrogated on other grounds

by Doe v. Chao, 540 U.S. 614 (2004). However, our interpretive task with regard

to Section 362(k)(1) is made easier by the fact that Congress added "including

costs and attorneys' fees" to the term "actual damages." The Supreme Court has

instructed that "[i]t is our duty to give effect, if possible, to every clause and word

of a statute." United States v. Menasche, 348 U.S. 528, 538–39 (1955) (quotation

omitted). In keeping with this duty, we read the phrase "including costs and

attorneys' fees" as broadening the notion of actual damages beyond the immediate injury incurred in ending the violation of a stay. Based on the text of Section 362(k)(1), it is clear that Congress intended that the word "including" serve as a word of enlargement. See Include, Black's Law Dictionary 524 ("'Including' within statute is interpreted as a word of enlargement or of illustrative application . . . .").

This interpretation accords with our precedent. In In re Rosenberg, 779 F.3d 1254 (11th Cir. 2015), we recently examined another fee-shifting provision of the Bankruptcy Code, Section 303(i)(1), which authorizes an award of "a reasonable attorney's fee" to any debtor who is forced into bankruptcy by someone who improperly files an involuntary petition. Id. at 1259–60. This Court held that based upon the text of Section 330(i)(1) "nothing . . . precludes appellate fees or limits fees to only those incurred before the date of dismissal." Id. at 1265.

Similarly, we hold that nothing in the text of Section 362(k)(1) limits the scope of attorneys' fees to solely ending the stay violation. Congress made sure to add that Section 362(k)(1)'s definition of "actual damages" includes costs and attorneys' fees. See 3 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 362.12[3] (16th ed. 2014) [hereinafter Collier] ("Attorneys' fees incurred in prosecuting an action to obtain full relief under the statute, including any entitlement to actual and punitive damages, is as much a part of the debtor's 'actual

damages' as those incurred in stopping the stay violation."). Congress did not say those costs and attorneys' fees were limited to ending the stay violation, but rather spoke to a full recovery of damages including fees and costs incurred from violating a stay. This explicit, specific, and broad language permits the recovery of attorneys' fees incurred in stopping the stay violation, prosecuting a damages action, and defending those judgments on appeal.

Further, the only other circuit to have examined this question in detail reached the same conclusion we do.[3] See In re Schwartz-Tallard, 803 F.3d 1095, 1101 (9th Cir. 2015) (en banc). The Ninth Circuit, sitting en banc, held in a 9-1 decision that "nothing in the statute [] suggests Congress intended to cleave litigation-related fees into two categories, one recoverable by the debtor, the other not." Id. at 1099. Instead, the court pointed out that the phrase "including costs and attorneys' fees" contained "no limitation on the remedy for which the fees were incurred." Id. In other words, the Ninth Circuit said, Ms. Mantiply's interpretation "would have to read into the statute limiting language—something like, 'including costs and attorneys' fees *incurred to end the stay violation*'—that is simply not present." Id. As the Ninth Circuit pointed out, there is no such textual limitation on the scope of attorneys' fees. Id. And adding such a limitation would eliminate the

---

[3] The Fifth Circuit also reached the same holding, but without much explanation. See In re Repine, 536 F.3d 512, 522 (5th Cir. 2008) ("The lower courts in our Circuit have concluded that it is proper to award attorney's fees that were incurred prosecuting a section 362(k) claim. We adopt the same reading of section 362(k) and therefore agree." (citations omitted)).

9

effectiveness of Section 362(k)(1)'s remedy. See Collier ¶ 362.12[3] ("[The] 'private attorney general' purpose of section 362(k)(1) is undermined if debtors in bankruptcy, having significant constraints on their ability to pay for legal representation, are not able to recover attorneys' fees for their entire representation in a stay enforcement proceeding."). Like other fee-shifting statutes, this one is aimed at "making it possible for persons without means to bring suit to vindicate their rights." See Purdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 559 (2010); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 4 (2012) ("A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored.").

This result also makes sense in the context of bankruptcy litigation. The lion's share of damages from violations of automatic stays are typically attorneys' fees. Most debtors are not in the financial position to afford an action to prosecute damages and, even if they could, limiting fees to those incurred in ending the stay violation would be too small to justify the expensive litigation that may follow. See Schwartz-Tallard, 803 F.3d at 1100. Rather than draining the limited funds in the bankruptcy estate and jeopardizing creditors' recoveries, the party wrongfully violating the automatic stay and causing the resulting damage awards is the one required to shoulder these fees. See id. That is all too clear in a case like this, in

10

which Ms. Mantiply has appealed each and every adverse order to the district court and then to this Court time and again.

Having determined that Section 362(k)(1)'s award of attorneys' fees apply to prosecuting damages actions, we have no trouble concluding that defending that judgment on appeal is also within the statute's fee-shifting authorization. This Court has held many times that fee-shifting statutes—which Section 362(k) undoubtedly is—entitle parties not only to fees in the court of first instance, but also to appellate fees incurred in defending the judgment. See In re Rosenberg, 779 F.3d at 1265; Thompson v. Pharmacy Corp. of Am., Inc., 334 F.3d 1242, 1245 (11th Cir. 2003) (holding that "an attorney may recover fees for time spent litigating the award of a [11 U.S.C. §] 1988 fee"); Finch v. City of Vernon, 877 F.2d 1497, 1508 (11th Cir. 1989) (holding that a plaintiff who prevailed on a 42 U.S.C. § 1983 claim was "entitled to an award of attorney's fees incurred [on] appeal"); see also Comm'r, INS v. Jean, 496 U.S. 154, 161–62 (1990) (noting that fee-shifting statutes treat "a case as an inclusive whole, rather than as atomized line-items").[4]

---

[4] Because we affirm the district court based on the text of the statute itself, we need not address the Hornes' argument that this issue is foreclosed by the law-of-the-case doctrine. See Mink v. Smith & Nephew, Inc., 860 F.3d 1319, 1324 (11th Cir. 2017) ("We may affirm the District Court on any ground supported by the record, regardless of whether the District Court relied on it.").

11

## III. OTHER ISSUES

In the alternative, Ms. Mantiply raises three other challenges to the district court's award of attorneys' fees. We review for an abuse of discretion the district court's attorneys' fee award. Grant v. George Schumann Tire & Battery Co., 908 F.2d 874, 878 (11th Cir. 1990). The district court abuses its discretion when it fails to apply proper legal standards, fails to follow proper procedures, or bases its award on findings of fact that are clearly erroneous. Id. Each of Ms. Mantiply's arguments is addressed in turn.

## A. APPELLATE RULES COMPLIANCE

First, Ms. Mantiply argues that the Hornes are not entitled to appellate fees because their motions to this Court—which we transferred to the district court— did not comply with Federal Rule of Appellate Procedure 27 nor Eleventh Circuit Rule 27-1(a)(3). Both these rules require that a motion "state with particularity the ground for the motion, the relief sought, and the legal argument necessary to support it" and that "[a]ny affidavit or other paper necessary to support a motion . . . be served and filed with the motion." Fed. R. App. P. 27(a)(2); see 11th Cir. R. 27-1(a)(3) ("A motion shall be accompanied by . . . supporting documentation required by FRAP 27, including relevant materials from previous judicial or administrative proceedings in the case or appeal."). Specifically, Ms. Mantiply contends that the Hornes' motions did not comply with these rules

because they incorporated relevant arguments and supporting documentation by reference. Ms. Mantiply also points out that the Hornes filed an amended motion for appellate fees with this Court without first asking for leave to amend.

The district court recognized that both parties "assert[ed] various technical objections to the content and timing of the motions and responses," but chose "to avoid becoming mired in that minutiae," opting instead to address the motions' substantive issues. Our review of the Hornes' motions reveals that they included copies of the relevant documentation, and Ms. Mantiply does not argue that she suffered any prejudice whatsoever from the alleged oversights. On this record, we cannot say the district court abused its discretion.

## B. PROOF OF DAMAGES

Next, Ms. Mantiply argues that the Hornes failed to meet their burden of proof in establishing damages by a preponderance of the evidence. Primarily, Ms. Mantiply points out that the Hornes did not file a copy of their retainer agreement nor any affidavit stating that the fee statements attached to their motions were actually owed to their counsel.

Bankruptcy courts in this circuit uniformly have held that the debtor has the burden of proving damages from an automatic stay violation by a preponderance of the evidence. See, e.g., In re Campbell, 553 B.R. 448, 455 (Bankr. M.D. Ala. 2016). Our review of the record shows that each of the Hornes' motions attached

affidavits from their counsel attesting that they served as counsel for the Hornes and kept contemporaneous record of their services rendered, including the time expended and expenses incurred in defending the Hornes. The billing statements attached to each affidavit provide an itemized list of these services, with the time spent on each, as well as expenses. Additionally, the Hornes' motions incorporate by reference earlier-filed affidavits from disinterested legal experts that attest the hourly rates charged by the Hornes' counsel were consistent with the prevailing market rates in their local legal community. On this record, the district court did not abuse its discretion.[5]

## C. REASONABLENESS OF FEE AWARD

Ms. Mantiply last argues that the fee award was not reasonable. An award of attorneys' fees is governed by a reasonableness standard using the lodestar approach. See Grant, 908 F.3d at 878 (applying the lodestar approach to an analogous provision of the Bankruptcy Code); In re Parker, 419 B.R. 474, 477–78

---

[5] Ms. Mantiply also briefly asserts that the Hornes failed to meet their obligation under Section 362(k)(1) to mitigate damages by communicating with her before seeking fees. However, this argument comes too late. The authority that Ms. Mantiply relies on, In re Briskey, 258 B.R. 473 (Bankr. M.D. Ala. 2001), indicates that "debtors should not file motions with [bankruptcy courts] to enforce [an] automatic stay unless they have first made a reasonable attempt to communicate with the creditor to resolve the matter." Id. at 580. But the bankruptcy court in this case long ago established that the automatic stay was violated. Ms. Mantiply should have raised this issue of fact—which the Hornes hotly dispute—at that time. Cf. Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) ("[A]s a court of appeals, we review claims of judicial error in the trial courts. If we were regularly to address questions—particularly fact-bound issues—that district[] court[s] never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court.").

(Bankr. M.D. Ala. 2009) (applying the lodestar approach to Section 362(k)(1)).

Under this approach, a court must "(1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the factors in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)[6] and explain how they affect the award." Grant, 908 F.2d at 877–78. Those factors are as follows:

> (1) the time and labor required, (2) the novelty and difficulty of the legal questions, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee for similar work in the community, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorney, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Id. at 878 n.9.

Ms. Mantiply specifically argues that the district court failed to exercise proper "billing judgment" by not considering the proportionality of the requested appellate fees to the results obtained in bankruptcy court.[7] Our review of the record shows otherwise.

---

[6] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decision of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

[7] As an initial matter, Ms. Mantiply argues that the Hornes abandoned any argument that their requested appellate fees were reasonable because they did not specifically cite the Johnson factors in their motions. Our review of the record, however, shows that although the factors were

In considering the Hornes' motions for appellate fees, the district court relied on the affidavits and billing statements attached to them to reach its fees figure. The district court applied the correct legal standard, and first used these documents to ascertain the nature and value of the services rendered. The court then employed the Johnson factors, and made findings as to each relevant factor. Specifically, the district court found that although the requested $92,495.86 in appellate fees was a large figure, it was not unreasonable given the time and labor involved in the appeals, which it found were "unnecessarily complicated" by Ms. Mantiply's many appeals. The district court also pointed to the skill and experience required of counsel in this case; the favorable results counsel achieved at each step of the litigation; and the undesirability of litigating against a fellow lawyer. The court found that the remaining Johnson factors were not relevant in this case. And importantly, the district court addressed Ms. Mantiply's objections to the fee motions. See Am. Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999) ("[W]here specific objections are made a court's order should consist of more than conclusory statements."). Based on these findings, the district court determined that the Hornes' requested appellate fees were reasonable.

---

not specifically cited, the motions clearly contain arguments about the reasonableness of the requested fees. We therefore decline Ms. Mantiply's invitation to view their reasonableness argument as abandoned.

The Supreme Court has instructed that "[a] request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Instead, parties will ideally "settle the amount of a fee." Id. Of course, that is most certainly not what has occurred in this case. As to Ms. Mantiply's proportionality argument, the district court found that Ms. Mantiply had "unnecessarily complicated" this case, creating an unduly large record and repeatedly appealing. Specifically, the court recognized that Ms. Mantiply's proportionality argument "ignore[d] the fact that the Hornes *necessarily* incurred [the appellate] fees because" of her own litigation decisions. Based on our review of the record, we cannot say the district court's findings were clearly erroneous, nor did the court employ an incorrect legal standard or fail to follow proper procedures. Grant, 908 F.2d at 878. The district court therefore did not abuse its discretion. Id.

## IV. MOTION FOR ATTORNEYS' FEES

On January 17, 2017, after the Hornes' counsel completed briefing for this appeal, they filed (yet another) motion for attorneys' fees to this Court incurred on the instant appeal. The Hornes subsequently amended that motion the next day, on January 18. In opposition, Ms. Mantiply raises the same arguments that this Court has already addressed.

Although we transferred the appellate attorneys' fees motions from Ms. Mantiply's previous appeal to the district court to consider in the first instance, we decline to do so here. As set out above, the Supreme Court has instructed that "[a] request for attorney's fees should not result in a second major litigation." Hensley, 461 U.S. at 437. Where appellate courts can "resolve, instead of remand, fee determination issues," doing so "is consistent with [that] directive." Barnes, 168 F.3d at 432. Indeed, "[b]y deciding such matters ourselves where possible, we dispose of issues that ought not be extensively litigated." Id.

As a result, we will exercise our discretion and resolve the Hornes' motion now. See id. In short, it is granted. Our review of the Hornes' motion shows that it is properly supported by documentation indicating 121.4 hours were spent at an hourly rate of $250, plus expenses of $290.98, for a total requested $30,559.98. For the same reasons as the district court, we hold that the requested fees and expenses, in this case, are reasonable. The Hornes' motion is accordingly granted.

## V. CONCLUSION

In sum, we affirm the district court's award of attorneys' fees to the Hornes. We hold that Section 362(k)(1) of the Bankruptcy Code specifically departs from the American Rule and authorizes costs and attorneys' fees incurred by the debtor in ending a willful violation of an automatic stay, prosecuting a damages violation, and defending those judgments on appeal. We also hold that the district court did

18

not abuse its discretion in awarding the Hornes attorneys' fees. Additionally, the

Hornes' motion for attorneys' fees incurred in this appeal is **GRANTED**.

   **AFFIRMED.**