[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13899
_____

B.C. Docket No. 1:15-bk-64860-JRS


In Re: RACHEL CAPELOTO GUILLEN,

Debtor.
_____

NANCY J. WHALEY,

Plaintiff - Appellant,

versus

MANUEL GUILLEN as personal representative of Rachel Capeloto Guillen,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 25, 2020)

Before BRANCH and MARCUS, Circuit Judges, and UNGARO,[*] District Judge.

MARCUS, Circuit Judge:

This appeal comes to us directly from a bankruptcy court order confirming the modified Chapter 13 plan of debtor Rachel Capeloto Guillen.  See 28 U.S.C. § 158(d)(2)(A).  We agreed to hear this appeal straight from the bankruptcy court to answer a question of first impression that has divided our sister circuits: whether bankruptcy courts must find some change in circumstances before permitting debtors to modify confirmed plans under 11 U.S.C. § 1329.  In the view of the United States Court of Appeals for the Fourth Circuit, the requirement protects the finality of bankruptcy courts' confirmation orders.  But the United States Courts of Appeals for the First, Fifth, and Seventh Circuits read § 1329 differently.  The requirement appears nowhere on the face of the statute, and those courts have declined to graft onto it a threshold showing of any change in circumstances.

In this case, the bankruptcy court found no requirement in the statutory text that debtors show a change in circumstances before modifying confirmed plans. Neither do we.  Nor do we see any reason to add gloss to the statute Congress wrote.  Accordingly, we affirm.

---

[*] Honorable Ursula Ungaro, United States District Judge for the Southern District of Florida, sitting by designation.

## I.

Rachel Capeloto Guillen filed a voluntary petition under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 101 et seq., on August 4, 2015.[1]  Her petition identified two secured creditors: Central Mortgage Company, which held a $116,277 claim secured by a mortgage on Guillen's home, and Wells Fargo, which held a second-priority mortgage on her home in the amount of $50,000.  But Guillen disputed the validity of Wells Fargo's lien.  She filed a Chapter 13 plan concurrently with her petition, and in it Guillen alleged that Wells Fargo had failed to properly perfect its security interest.  So on October 20, 2015, Guillen commenced an adversary proceeding against the bank, seeking to avoid its lien.  After several months of discovery, and after Guillen filed a motion for summary judgment, Wells Fargo and Guillen entered into a consent judgment on July 13, 2016.  The parties agreed that Wells Fargo had not perfected its security interest and held only an unsecured claim.

Shortly thereafter, the bankruptcy court confirmed Guillen's Chapter 13 plan.  The plan required Guillen to pay her unsecured creditors a total of $20,172.  The court's confirmation order affirmed that the plan satisfied the requirements of 11 U.S.C. § 1325.  That statute imposes several requirements on Chapter 13

---

[1] Guillen passed away on March 14, 2018.  The bankruptcy court appointed Guillen's widower, Manuel Guillen, as her personal representative for purposes of administering this case.  We then granted a motion substituting Manuel Guillen as appellee.

debtors, but most relevant for our purposes is the so-called "best interests of creditors" test. See 11 U.S.C. § 1325(a)(4); 8 Collier on Bankruptcy ¶ 1325.05 (16th ed. 2020) ("The confirmation standard set forth in section 1325(a)(4) has traditionally been known as the 'best interests of creditors test.'").[2] The test measures unsecured creditors' recovery under a Chapter 13 plan against what those creditors would have received in a hypothetical Chapter 7 liquidation. The bankruptcy court must find the recovery under the plan to be at least as great as what those creditors would have received in the liquidation -- if not, the court cannot confirm the plan.

Guillen's plan also provided for the payment of $4,900 in attorney's fees, along with any approved fees incurred in connection with an adversary proceeding. Four months after confirmation, Guillen's counsel submitted an application for compensation to the bankruptcy court. He sought $8,295 for post-petition legal services rendered in connection with Guillen's adversary proceeding against Wells Fargo. To accommodate these new fees, Guillen filed a modified Chapter 13 plan.

---

[2] The provision says that a bankruptcy court

> shall confirm a plan if . . . the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1325(a)(4).

Section 1329 permits debtors, unsecured creditors, and trustees to modify confirmed plans in any one of four ways: to (1) increase or reduce the amount of payments on claims of a particular class under the plan; (2) extend or reduce the time for making payments; (3) alter the distribution to a creditor to account for payments made other than under the plan; or (4) reduce amounts to be paid under the plan to account for the debtor's purchase of health insurance. See 11 U.S.C. § 1329(a)(1)–(4).[3]  Guillen's modification fit into the first bucket -- it sought to reduce the total pool available to unsecured creditors from $20,172 to $11,877, a

---

[3] Section 1329(a) reads:

> At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to --
>
> > (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> >
> > (2) extend or reduce the time for such payments;
> >
> > (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
> >
> > (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor (and for any dependent of the debtor if such dependent does not otherwise have health insurance coverage) [subject to certain requirements not applicable here].

11 U.S.C. § 1329(a).  On March 27, 2020, President Trump signed into law the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136, 134 Stat. 281 (the "CARES Act").  The CARES Act amends § 1329 to permit debtors to request modification of confirmed plans if "the debtor is experiencing or has experienced a material financial hardship due, directly or indirectly, to the coronavirus disease 2019 (COVID-19) pandemic."  CARES Act § 1113(b)(1)(C).  This provision will sunset one year after the CARES Act's enactment.  Id. § 1113(b)(2)(A)(iii), (B).

reduction of $8,295 that would allow her to pay her attorney's fees incurred in the adversary proceeding.

Nancy Whaley, the Standing Chapter 13 Trustee for the Northern District of Georgia (the "Trustee"), objected to the modification. She claimed that the modified plan violated the best interests of creditors test. Moreover, she argued that the doctrine of res judicata barred Guillen's modification. The bankruptcy court disagreed and confirmed Guillen's modified plan. The court found that § 1329 creates an exception to the finality of confirmed Chapter 13 plans, and that Guillen's modified plan satisfied the express requirements of § 1329.

This timely appeal followed.[4]

## II.

We review de novo the bankruptcy court's conclusions of law. In re Tennyson, 611 F.3d 873, 875 (11th Cir. 2010). Title 11 U.S.C. § 1327 treats confirmed Chapter 13 plans like the final judgments of district courts, immune from collateral attack. The statute says that the "provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has

---

[4] The bankruptcy court sua sponte certified its order confirming Guillen's modified plan for direct appeal to this Court. The bankruptcy court reasoned that resolution of this appeal would require us to answer a question of first impression that has divided our sister circuits. The bankruptcy court also concluded that immediate appeal would materially advance the progress of the case. See 28 U.S.C. § 158(d)(2)(A). We agreed and granted permission for direct appeal.

accepted, or has rejected the plan." 11 U.S.C. § 1327(a). As the Supreme Court has explained, confirmation "has preclusive effect, foreclosing relitigation of any issue actually litigated by the parties and any issue necessarily determined by the confirmation order." Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1692 (2015) (quotation omitted); see also In re Gonzalez, 832 F.3d 1251, 1258 n.4 (11th Cir. 2016) (explaining that a "confirmed plan is res judicata and its terms are not subject to collateral attack" (quotation omitted)).

At the same time, § 1329 carves out a limited exception to this general rule and permits debtors, trustees, and holders of allowed unsecured claims to modify confirmed plans, so long as they satisfy certain statutory requirements. See Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 108 (1991) (explaining that the principle of res judicata does not apply "when a statutory purpose to the contrary is evident" (quotation omitted)); In re Davis, 314 F.3d 567, 570 (11th Cir. 2002) (per curiam) ("A Chapter 13 plan of confirmation has res judicata effect unless it is subsequently modified by a bankruptcy court order." (citing 11 U.S.C. §§ 1327, 1329)). After "considering all matters of record in this case," the bankruptcy court found that Guillen satisfied the express criteria of § 1329 and confirmed her modified plan. The Trustee claims this was error. She asks us to read one additional requirement into § 1329 -- that debtors show some change in

7

circumstances before modifying confirmed plans.[5]  Absent this, she says, debtors will be free to disregard the finality of confirmation orders.  We are not convinced, and we decline to graft this requirement onto the statute.

We begin -- and could well end -- our analysis of § 1329 with its plain text. See Puerto Rico v. Franklin Cal. Tax-Free Tr., 136 S. Ct. 1938, 1946 (2016).  On its face, § 1329 does not impose a requirement that the bankruptcy court find any change in circumstances before modifying a confirmed plan.  See Collier on Bankruptcy ¶ 1329.02 (explaining that "section 1329 does not require the debtor to show cause to modify the plan").  We can discern no reason to speak where Congress has not; adopting the Trustee's "argument would result not in a construction of the statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. With a plain, nonabsurd meaning in view, we need not proceed in this way." Lamie v. U.S. Tr., 540 U.S. 526, 538 (2004) (alterations adopted and quotation omitted); see also Va. Uranium, Inc. v. Warren, 139 S. Ct. 1894, 1900 (2019) (explaining that "in any field of statutory interpretation, it is our duty to respect not only what Congress wrote but, as importantly, what it didn't write").  That

---

[5] The Trustee also argues that the bankruptcy court improperly applied the doctrine of res judicata.  But, as the Trustee conceded at oral argument, res judicata does not prevent a debtor from proposing to modify a confirmed plan.  Section 1329 permits debtors to modify confirmed plans.  Thus, as the Trustee recognized, the "only issue" this appeal presents is whether bankruptcy courts must find some change in circumstances before allowing debtors to modify confirmed plans under § 1329.

Congress did not require a circumstantial showing in § 1329 "speaks loudly and clearly." Myers v. TooJay's Mgmt. Corp., 640 F.3d 1278, 1285 (11th Cir. 2011). As we have often observed, when "Congress knows how to say something but chooses not to, its silence is controlling." Id. (quotation omitted); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 182 (2012) ("The familiar 'easy-to-say-so-if-that-is-what-was-meant' rule of statutory interpretation has full force here. The silence of Congress is strident." (quoting Comm'r v. Beck's Estate, 129 F.2d 243, 245 (2d Cir. 1942))).

We are confirmed in this interpretation of § 1329, not just by the statute's plain text, but by reference to the broader statutory scheme. After all, we read words "in their context and with a view to their place in the overall statutory scheme." King v. Burwell, 576 U.S. 473, 486 (2015) (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000)). We seek to "construe statutes, not isolated provisions." Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 290 (2010) (quotation omitted).

Throughout the Bankruptcy Code, when Congress sought to impose a "circumstances" requirement, it said so. Cf. Hamilton v. Lanning, 560 U.S. 505, 514 (2010) ("[W]e need look no further than the Bankruptcy Code to see that when Congress wishes to mandate simple multiplication, it does so unambiguously -- most commonly by using the term 'multiplied.'"). To list just a few examples:

9

Debtors who apply for Chapter 13's so-called hardship discharge must show "circumstances for which the debtor should not justly be held accountable."  11 U.S.C. § 1328(b)(1).  Further, a bankruptcy court may excuse a debtor's late filing of tax returns only upon a showing of "circumstances beyond the control of the debtor."  Id. § 1308(b)(2).  And, in fact, a bankruptcy court must deny the discharge to a Chapter 7 debtor who conceals or destroys financial records, "unless such act or failure to act was justified under all of the circumstances of the case."  Id. § 727(a)(3).

Indeed, in § 1329's Chapter 11 counterpart, Congress rests even the modification of confirmed plans upon a circumstantial showing.  Section 1127(b) permits a plan proponent or the reorganized debtor to modify a confirmed plan.  The modified plan must still meet the requirements of Chapter 11.  And the plan as modified "becomes the plan only if circumstances warrant such modification."  Id. § 1127(b) (emphasis added).  Contrast this with § 1127(e), the modification provision for Chapter 11 debtors who are individuals -- like the debtors in Chapter 13.  Section 1127(e) is virtually identical to § 1329(a).  Like § 1329(a), § 1127(e) permits modification to (1) increase or reduce payments to a class of creditors under the plan; (2) extend or reduce the time for making payments; or (3) alter the amount of a distribution to a creditor to account for payments made other than under the plan.  Id. § 1127(e)(1)–(3).  And, like a modification made pursuant to

10

§ 1329, a modification made under § 1127(e) does not depend on a change in circumstances. The requirement that is found in § 1127(b) is missing from § 1127(e). "Had Congress intended to" oblige individual debtors to show some change in circumstances before modifying confirmed plans, "it presumably would have done so expressly" -- just as it did in § 1127(b). Sandoz Inc. v. Amgen Inc., 137 S. Ct. 1664, 1677 (2017) (quoting Russello v. United States, 464 U.S. 16, 23 (1983)).

The Seventh Circuit reached the same result in In re Witkowski, 16 F.3d 739 (7th Cir. 1994). In Witkowski, the court upheld the trustee's modification of the debtor's initial Chapter 13 plan. Id. at 740. The first plan provided unsecured creditors with a 10% recovery on their claims. Id. When fewer unsecured creditors filed proofs of claims than expected, the trustee filed a modification, seeking to enlarge the recovery for those unsecured creditors who did file. Id. The debtor opposed the modification and argued that modification under § 1329 required a threshold showing of an unanticipated, substantial change in circumstances. Id. at 742. The Seventh Circuit disagreed. It could find no support for the debtor's position in the statute's text. Id. And it rejected the debtor's claim that enforcing § 1329 as written would inundate bankruptcy courts with motions to modify, "resulting in a great instability of both the plan and the creditor's position." Id. at 745. The First and Fifth Circuits likewise have refused to

11

superimpose this requirement onto the text of the statute.  See In re Meza, 467 F.3d 874, 877–78 (5th Cir. 2006); Barbosa v. Solomon, 235 F.3d 31, 41 (1st Cir. 2000).

One of our sister circuits, however, disagrees.  In In re Arnold, the Fourth Circuit held that res judicata bars modification unless there has been an unanticipated, substantial change in the debtor's financial condition.  869 F.2d 240, 243 (4th Cir. 1989).  In Arnold, the debtor experienced a substantial increase in his annual income post-confirmation -- from $80,000 to $200,000 in a two-year period.  Id. at 241.  So an unsecured creditor sought to modify Arnold's plan to increase the amount he owed.  Id.  The Fourth Circuit upheld the modification.  After concluding that only unanticipated, substantial changes in the debtor's financial condition can avoid the preclusive effect of confirmed plans, the court determined that Arnold's change in income was both unanticipated and substantial.[6]  Id. at 243.  The Fourth Circuit reaffirmed this holding more recently in In re Murphy, 474 F.3d 143, 150 (4th Cir. 2007) (requiring a threshold showing of an unanticipated, substantial change in circumstances before permitting modification to proceed).

---

[6] Here, the Trustee says that a bankruptcy court must find some change in circumstances -- rather than an unanticipated, substantial change in circumstances -- before allowing modification. Because we hold that § 1329 requires no showing of any change in circumstances at all, we need not consider what standard would be appropriate, or whether Guillen in fact suffered a change in circumstances in this case.

So why impose this requirement when the text of § 1329 does not?  The Fourth Circuit, and those lower courts that have followed it, are worried, as a matter of policy, about an onslaught of modification motions -- they seek to prevent modification "when minor and anticipated changes in the debtor's financial condition take place."  Id. at 149.  By requiring this threshold showing, the argument goes, courts promote judicial economy and "ensure[] that confirmation orders will be accorded the necessary degree of finality."  Id.  Absent this policy, they fear, "there is no readily available brake on the filing of motions under § 1329 by creditors and debtors simply hoping to produce a more favorable plan based on the same facts presented at the original confirmation hearing."  Id. (quoting In re Butler, 174 B.R. 44, 47 (Bankr. M.D.N.C. 1994)).

We remain unpersuaded.  For one, these general policy concerns cannot overcome the plain language of the statute.  See Astoria, 501 U.S. at 108 (noting courts lack "free rein to impose rules of preclusion, as a matter of policy, when the interpretation of a statute is at hand").  Moreover, as we see it, these concerns -- the same ones the Trustee raises in this appeal -- are overstated.  Congress built ample safeguards into § 1329 that stand in the way of frivolous modification -- debtors cannot "simply modify their plans willy nilly."  In re Meeks, 237 B.R. 856, 859–60 (Bankr. M.D. Fla. 1999).

13

For starters, only a limited universe of parties may seek to modify confirmed Chapter 13 plans. The statute reserves this opportunity for debtors, trustees, and unsecured creditors alone; secured creditors may not avail themselves of modification under § 1329. See 11 U.S.C. § 1329(a). Next, these parties may seek to modify confirmed Chapter 13 plans only for limited purposes. The modified plan may "increase or reduce the amount of payments on claims of a particular class." Id. § 1329(a)(1). It may extend or reduce the time for those payments. Id. § 1329(a)(2). It may alter the distribution to a creditor to account for payments made to that creditor other than under the plan. Id. § 1329(a)(3). And it may reduce the payments due under the plan to account for the debtor's purchase of health insurance. Id. § 1329(a)(4).

Moreover, the modified plan must still satisfy the requirements of § 1325(a), along with the requirements of §§ 1322(a), (b), and 1323(c). See id. § 1329(b)(1). These requirements ensure that modified plans commit sufficient resources to the payment of creditors' claims, id. § 1322(a)(1); pay priority claimants in full, subject only to limited exceptions, id. § 1322(a)(2), (4); and afford equal treatment to all claimants within a particular class, id. § 1322(a)(3). The plan as modified still must satisfy the best interests of creditors test. Id. § 1325(a)(4). And the modification must have been proposed in good faith. Id. § 1325(a)(3).

14

Even where modified plans satisfy these express limits, the statute reserves to the discretion of the bankruptcy court whether to confirm a modified plan. The bankruptcy court "shall confirm" a Chapter 13 plan if it meets the requirements of § 1325, see id. § 1325(a), but the court has discretion to confirm modified plans. Plans "may be modified" if they meet the requirements of § 1329. Id. § 1329(a). Nothing prevents a bankruptcy court from refusing to confirm a modified plan put before it. As we have recognized, bankruptcy courts retain "ample powers to prevent successive or abusive attempted modifications." In re Hoggle, 12 F.3d 1008, 1011–12 (11th Cir. 1994).

At oral argument, the Trustee claimed we resolved the question we answer today in In re Hoggle. We disagree. Nothing we have said today is contrary to our holding in Hoggle. There, the debtors in three consolidated cases lived in mobile homes purchased with financing from Green Tree Acceptance, Inc. Id. at 1009. Their Chapter 13 plans proposed to satisfy past-due payments owed to Green Tree. Id. After confirmation, each debtor failed once again to make a payment to Green Tree. Id. The lender then petitioned the bankruptcy court for relief from the automatic stay, but the court rejected the motion. Id. Instead, the court permitted the debtors to modify their plans to cure the post-confirmation defaults. Id.

The legal issue we resolved in Hoggle was different from the one we face today. We interpreted a different statute, § 1322(b)(5), and concluded that its plain

15

language did not bar debtors from modifying confirmed plans under § 1329 to cure post-confirmation defaults.  Id. at 1010.  We did note in Hoggle, though, that "Congress designed § 1329 to permit modification of a plan due to changed circumstances of the debtor unforeseen at the time of confirmation."  Id. at 1011. We stressed that the modification provision is "flexible" and acknowledged that "the problems which caused financial distress to begin with . . . do not magically disappear on the filing of a petition under chapter XIII."  Id. (alteration adopted) (quoting S. Rep. No. 95-989, 95th Cong., 2d Sess. 12 (1978)).

It remains true that an unforeseen change in circumstances is a good reason to permit a modification that otherwise satisfies § 1329.  But that is not to say it is the only reason.  And we reject the Trustee's attempt to convert a sufficient condition into a necessary one.  When a bankruptcy court faces a modified plan that satisfies the requirements of § 1329, it may properly consider whether there has been some change in circumstances when deciding whether to confirm the plan as modified.  But it is free to confirm the modified plan even where it has not found any change in circumstances.  See Barbosa, 235 F.3d at 41 (permitting parties to modify confirmed plans where they "advance a legitimate reason for doing so" (quotation omitted)).

That's just what the bankruptcy court did here.  In this case, Guillen sought to modify her plan, not to enrich herself at the expense of her creditors, but to pay

her attorney's fees.  These fees were incurred by her counsel in the conduct of a successful adversary proceeding against Wells Fargo -- an adversary proceeding that was the sine qua non of the unsecured creditors' recovery in this case.  And the bankruptcy court determined it would be preferable to modify the plan than to either (a) compel Guillen, a fixed-income debtor, to pay an additional $8,295 over the life of her plan; or (b) deprive her counsel of the fees he had earned in the prosecution of a vital adversary proceeding.

Finally, in her reply brief (and only in her reply brief), the Trustee argues that the bankruptcy court improperly included Guillen's attorney's fees in its calculation of the best interests of creditors test, and that the amount of those fees was not modifiable post-confirmation.  The Trustee has abandoned these claims.  As we have made clear, "[w]hen an appellant fails to challenge properly on appeal one of the grounds on which the [bankruptcy] court based its judgment, he is deemed to have abandoned any challenge of that ground."  Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014).  We have stressed too that "an appellant must directly challenge each of the [bankruptcy] court's grounds in his initial brief; challenges that are merely hinted at or that first appear in a reply brief do not merit consideration."  Hi-Tech Pharm., Inc. v. HBS Int'l Corp., 910 F.3d 1186, 1194 (11th Cir. 2018); see also Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this

17

Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."). Here, the Trustee didn't just omit these claims from her opening brief. She told this Court -- and, for that matter, the appellee -- that the bankruptcy court's calculation of the best interests of creditors test was not "the issue on appeal." We decline the Trustee's invitation to consider her belated objections at this late stage.

* * *

The bankruptcy court concluded that § 1329 does not impose a change-of-circumstances requirement on debtors and confirmed Guillen's modified plan. We agree and hold that a debtor need not make any threshold showing of a change in circumstances before proposing a modification to a confirmed plan under § 1329.

**AFFIRMED.**

18