[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

———————————————

No. 24-10264

———————————————

In re: JOHNNY BRACKSTON HILL,
 LISA JO ANN BOUTWELL,

Debtors.

————————————————————————————

CHRISTOPHER T. CONTE,

Plaintiff-Appellant,

*versus*

JOHNNY BRACKSTON HILL,
LISA JO ANN BOUTWELL,

Defendants-Appellees.

———————————————

2                    Opinion of the Court                    24-10264

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:23-cv-00221-KD-N

_____

_____

No. 24-10265

_____

In re: PEGGY BEDSOLE PROFFITT,

Debtor.

_____

CHRISTOPHER T. CONTE,

Plaintiff-Appellant,

*versus*

PEGGY BEDSOLE PROFFITT,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:23-cv-00219-KD-N

_____

Before BRANCH, ABUDU, and KIDD, Circuit Judges.

PER CURIAM:

In these consolidated cases, Lisa Jo Ann Boutwell and Peggy Proffitt (collectively "the debtors"), two debtors in Chapter 13 bankruptcy, received post-petition personal-injury settlement payments. Christopher T. Conte, their bankruptcy-estate trustee ("the trustee"), sought to take that money and distribute it to the debtors' creditors on top of the debtors' regular payments to their creditors. The bankruptcy court declined to modify the debtors' payment schedules, and the district court affirmed.

The trustee argues on appeal that the bankruptcy court should have granted his motions for modification because the proposed plans met the requirements of 11 U.S.C. § 1329, and the settlement proceeds increased the debtors' ability to pay their unsecured creditors. We conclude, however, that the bankruptcy court did not abuse its discretion by denying the trustee's motions. Accordingly, after careful review and with the benefit of oral argument, we affirm.

## I.    Background

### A.    Lisa Jo Ann Boutwell

On June 11, 2018, Boutwell filed for Chapter 13 bankruptcy. That October, the bankruptcy court confirmed her Chapter 13 payment plan, which provided for monthly payments of $852 for 66 months to her unsecured creditors. All told, Boutwell's

unsecured creditors would receive 40.25% of their full claims under Boutwell's confirmed plan, a figure referred to as a 40.25% "dividend."

Subsequently, in August 2019, Boutwell was injured at a Dollar General when merchandise fell onto her head. As a result, Boutwell suffered several bulged discs requiring surgery. Boutwell's doctor also told her to stay in bed for three months and to not lift anything "heavier than a dinner plate." Boutwell testified in May 2023 that she was "still recovering" from her injuries. Boutwell continued to see a pain management doctor and wear a Transcutaneous Electrical Nerve Stimulation ("TENS") unit because of the accident.

Boutwell received a $45,000 settlement from Dollar General. Of that figure, $15,750 went to attorneys' fees, $3,463.65 went to expenses incurred by special counsel, and $6,100.74 paid for subrogation and medical bills. Accordingly, Boutwell received $19,685.61 in net settlement proceeds.

During the bankruptcy court proceedings, Boutwell also testified about her financial situation. She does not work; she receives Social Security disability payments. Her husband (and co-debtor) works at a paper mill. Boutwell testified they live "paycheck to paycheck." They have one working vehicle. Boutwell's husband had also borrowed Boutwell's mother's truck, but he hit a deer with the truck, incurring over $6,000 in damages that they could not pay to fix the truck. After Boutwell's accident and surgery, Boutwell's husband took time off work to help care

for her, and they had to borrow $3,500 from her parents to help pay the bills.

### B.    Peggy Proffitt

On November 12, 2018, Proffitt filed for Chapter 13 bankruptcy. The following April, the bankruptcy court confirmed her Chapter 13 payment plan, which provided that she would pay $964 per month for 60 months to her unsecured creditors. All told, Proffitt's unsecured creditors would receive a 62.19% dividend.

Subsequently, in July 2022, Proffitt was involved in a slip-and-fall accident at a Walmart. Proffitt was walking out the door of the store when her foot caught on a rug, and she fell flat onto the concrete outside. She suffered a deep cut on her elbow (which did not require stitches) and a gash on her nose. Proffitt's nose still has a scar from the gash. Proffitt would need additional surgery to have the scar removed, which was estimated to cost about $500. The fall also exacerbated pre-existing back pain. Her income did not change as a result of the accident.

In November 2022, Proffitt received a $13,000 settlement from Walmart. Of that figure, $4,550 went to attorneys' fees, $189.57 went to expenses, and $575.04 went to subrogation. Accordingly, Proffitt received $7,685.39 in net settlement proceeds.

### C.    Procedural History

In the debtors' respective bankruptcy proceedings, the trustee moved under 11 U.S.C. § 1329 to modify the debtors' payment plans to have all of their net settlement proceeds paid to

the trustee.  The trustee sought to use the money to increase Boutwell's unsecured creditors' dividend from 40.25% to 77.07% and to increase Proffitt's unsecured creditors' dividend from 62.19% to 76.86%.  The bankruptcy court held an evidentiary hearing on the trustee's motions for modification.

Applying 11 U.S.C. § 1329, which governs modifications of Chapter 13 bankruptcy plans, the bankruptcy court denied the trustee's motions.  The bankruptcy court first determined that the debtors' net settlement proceeds were property of their bankruptcy estates.    The bankruptcy court then determined that the Bankruptcy Code did not require the court to modify the debtors' bankruptcy plans to account for the post-petition personal-injury net settlement proceeds.  Finally, the bankruptcy court determined that the settlement proceeds did not increase the debtors' ability to pay their unsecured creditors' claims.  Thus, the bankruptcy court found "no legitimate reason for the modification requested by the trustee" and denied the motions, invoking its discretionary authority.

The trustee appealed to the United States District Court for the Southern District of Alabama.  The bankruptcy court stayed enforcement of its order denying modification.  In that order, the bankruptcy court provided that the debtors would continue to make their plan payments and could apply for a discharge upon completion of their plans, but such completion and discharge would be "without prejudice to the trustee's right to pursue modification of the plans to apply the nonexempt Settlement

24-10264                Opinion of the Court                7

Funds to the cases and increase the percentage paid on unsecured claims."[1]

The district court affirmed the bankruptcy court. The trustee appealed to us.

## II.    Standard of Review

In bankruptcy cases, we "sit[] as a second court of review and thus examine[] independently the factual and legal determinations of the bankruptcy court and employ[] the same standards of review as the district court." *In re Brown*, 742 F.3d 1309, 1315 (11th Cir. 2014) (quotation omitted). "Where, as here, the district court affirms the bankruptcy court's order, we review

---

[1] In August 2024, the debtors both received discharges from their Chapter 13 bankruptcy plans. In light of these discharges, we asked the parties to brief the following question: "What effect, if any, do those discharges have on the justiciability of the Chapter 13 Trustee's appeal?" *See Neidich v. Salas*, 783 F.3d 1215, 1216 (11th Cir. 2015) (holding that "the dismissal of a Chapter 13 case moots an appeal arising from the debtor's bankruptcy proceedings" and observing that the debtor no longer had "a Chapter 13 plan . . . that the trustee objects to"). A case is moot if "a court finds that it can no longer provide a plaintiff with effective relief." *In re Stanford*, 17 F.4th 116, 121 (11th Cir. 2021). Here, however, we conclude that the bankruptcy court's stay order kept this appeal from becoming moot. By staying its order denying modification, the bankruptcy court essentially discharged the debtors *except for* the settlement proceeds, which would be held off to the side until the trustee's appeal was resolved. Thus, as the trustee notes, if we affirm, the settlement proceeds "would be disbursable to the Debtors," but if we reverse, the proceeds "would be disbursable to the unsecured creditors as an additional dividend." With a remaining dispute about who gets the settlement proceeds, we may still provide relief in this case. Accordingly, this appeal is not moot. *See id.*

the bankruptcy court's decision." *In re Rosenberg*, 779 F.3d 1254, 1264 (11th Cir. 2015).

Here, the decision of whether to modify a confirmed Chapter 13 plan is committed to the discretion of the bankruptcy court. *See* 11 U.S.C. § 1329(a) ("At any time after confirmation of the plan but before the completion of payments under such plan, the plan *may* be modified . . . ." (emphasis added)); *In re Guillen*, 972 F.3d 1221, 1229 (11th Cir. 2020) (observing that § 1329 "reserves to the discretion of the bankruptcy court whether to confirm a modified plan"). Accordingly, we review the bankruptcy court's decision for an abuse of discretion. *See SuVicMon Dev., Inc. v. Morrison*, 991 F.3d 1213, 1225 (11th Cir. 2021). A court "abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Id.* (quotation omitted). A court may "also abuse its discretion by committing a clear error in judgment." *Id.* (alteration adopted) (quotation omitted).

## III.    Discussion

On appeal, the trustee raises several issues with the bankruptcy court's decision not to modify the debtors' Chapter 13 plans. We conclude, however, that the bankruptcy court did not abuse its discretion.

24-10264                Opinion of the Court                9

As mentioned, 11 U.S.C. § 1329 governs modifications of confirmed Chapter 13 bankruptcy plans.[2] For a plan to be modified under section 1329, the proposed modification must conform with "[s]ections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title." 11 U.S.C. § 1329(b)(1). If a proposed modification meets the relevant requirements, then "the plan may be modified." *Id.* § 1329(a). We have recognized that "[n]othing prevents a bankruptcy court from refusing to confirm a modified plan put before it," even "where modified plans satisfy" the requirements of section 1329. *Guillen*, 972 F.3d at 1229. Accordingly, our review turns on (1) whether the trustee's proposed modifications met the requirements of section 1329; and (2) if so, whether the bankruptcy court abused its discretion by denying the proposed modifications.

---

[2] For relevant background, "Chapter 13 of the Bankruptcy Code is designed to facilitate adjustments of the debts of individuals with regular income through extension and composition plans funded out of future income, under the protection of the court." *Brown*, 742 F.3d at 1315 (quotation omitted). "Under Chapter 13, any individual with regular income may file for Chapter 13 reorganization and make payments to a trustee under bankruptcy court protection, with the trustee fairly distributing the funds deposited to creditors until all debts have been paid." *Id.* at 1315–16 (quotation omitted). Unlike Chapter 7 bankruptcy, in which a debtor's assets are liquidated and his creditors are paid with the proceeds, a Chapter 13 debtor gets to "retain his non-exempt assets and use his regular income (instead of those assets) to repay his debts" according to his confirmed bankruptcy plan. *Id.* at 1316. Sections 1321 through 1325 of Title 11 of the United States Code govern initial plan confirmation, and section 1329 governs post-confirmation modification of plans. *See* 11 U.S.C. §§ 1321–25, 1329.

Turning to section 1329, that statute requires, in relevant part, modified plans to comply with "the requirements of section 1325(a)." 11 U.S.C. § 1329(b)(1). Section 1325, in turn, among other things, sets minimum requirements for what the debtor must pay to his unsecured creditors pursuant to the proposed plan under consideration. *See generally id.* § 1325(a)(4), (b)(1). The "liquidation test," codified in § 1325(a)(4),[3] sets a floor on the total value of the debtor's payments to her unsecured creditors: the total value of the payments under the Chapter 13 plan must be "not less than" the proceeds the unsecured creditors would receive in a hypothetical Chapter 7 liquidation. *Id.* § 1325(a)(4). And the "disposable-income test," codified in § 1325(b)(1),[4] provides a floor for how

---

[3] The liquidation test provides, in full, that under a Chapter 13 plan, "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim [cannot be] less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1325(a)(4).

[4] The disposable-income test provides, in full, that

> [i]f the trustee or [an unsecured creditor] objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> > (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> >
> > (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

much of the debtor's projected disposable income must be paid to unsecured creditors: all of it. *Id.* § 1325(b)(1)(B).

The parties and amici dispute several issues about whether and how the liquidation and disposable-income tests apply to modified plans under section 1329. We, however, need not decide those issues today. Notably, the debtors do not contest that even under their reading of sections 1325 and 1329, the trustee's proposed modified plans met the applicable minimum requirements of those statutes. The debtors' position makes sense: as discussed, sections 1325 and 1329 set floors for what the debtors must pay their creditors, and the trustee in this case sought to have the debtors pay *more* to their unsecured creditors than the debtors were previously paying. Unsurprisingly, the trustee also contends that his proposed modified plans met the requirements of section 1329. Accordingly, we will assume without deciding that the trustee's proposed modified plans met all relevant requirements of section 1329.

We next turn to "the discretion of the bankruptcy court whether to confirm a modified plan" that meets the requirements of section 1329. *Guillen*, 972 F.3d at 1229. Here, after an evidentiary hearing, the bankruptcy court decided not to modify the debtors' plans. The bankruptcy court reasoned that both debtors were still experiencing pain from their injuries as of the bankruptcy court's

---

11 U.S.C. § 1325(b)(1). In other words, under a Chapter 13 plan, unsecured creditors must be receiving everything they are owed, otherwise the debtor must be paying everything she can. *See id.*

hearing, Boutwell was living paycheck-to-paycheck and needed money to pay for car repairs and to repay her parents, and Proffitt needed additional surgery. Accordingly, the bankruptcy court found that the settlement proceeds did not increase the debtors' ability to pay their unsecured creditors in a way sufficient to justify approval of the trustee's proposed modifications. The bankruptcy court's conclusion finds ample support in the record based on Boutwell's and Proffitt's testimony at the bankruptcy court's evidentiary hearing. Accordingly, we find no "clear error in judgment" here. *SuVicMon Dev., Inc.*, 991 F.3d at 1225 (quotation omitted).

The trustee disagrees and asserts that the bankruptcy court erred in its judgment because the settlement proceeds increased the debtors' ability to pay their unsecured creditors.[5] We have explained, however, that while "an unforeseen change in circumstances is a good reason to permit a modification that . . . satisfies § 1329," modification is not required: *"[n]othing* prevents a bankruptcy court from refusing to confirm a modified plan put before it." *Guillen*, 972 F.3d at 1229 (emphasis added).

---

[5] The trustee also argues that the bankruptcy court's decision conflicts with our decision in *In re Waldron*, 536 F.3d 1239 (11th Cir. 2008). Not so: our decision in *Waldron* merely reaffirmed the trustee's and unsecured creditors' right to *request* modification. 536 F.3d at 1245–46. We did not hold that the trustee or unsecured creditors are *entitled* to modification. Again, "[n]othing prevents a bankruptcy court from refusing to confirm a modified plan put before it." *Guillen*, 972 F.3d at 1229.

24-10264          Opinion of the Court          13

In sum, we assume the trustee's proposed modifications of the debtors' Chapter 13 bankruptcy plans met the requirements of 11 U.S.C. § 1329. The bankruptcy court, however, was within its discretion to deny the proposed modifications, and it had satisfactory reasons for doing so here. Accordingly, we affirm the denial of the trustee's motions to modify the debtors' bankruptcy plans.

### IV.    Conclusion

For the foregoing reasons, we affirm.

**AFFIRMED.**